**In re Roosevelt SMITH and Annie Corbin Smith, Debtors.**

**Bankruptcy No. 86–04728F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 21, 1987.

---

debtors, Roosevelt Smith and Annie Corbin Smith.

Joseph A. Goldbeck, Jr., Philadelphia, Pa., for Associates National Mortg. Corp.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 trustee.

## OPINION

BRUCE FOX, Bankruptcy Judge:

In this contested chapter 13 bankruptcy matter, a secured creditor has filed a proof of claim, seeking reimbursement from the debtors for prepetition and postpetition legal expenses it incurred. Through the proof of claim, the creditor, like many other mortgage lenders involved in chapter 13 bankruptcy cases, is attempting to pass on to its borrowers the costs it has incurred in attempting to enforce its rights under the mortgage obligation. The debtors have objected to the request.

This case illustrates why creditors seeking to collect attorney's fees and costs in a bankruptcy case and objecting debtors must carefully consider and articulate the legal authority which may give rise to an entitlement to reimbursement for prepetition and/or postpetition legal expenses or which may limit that entitlement. As explained below, the debtors' objection will be sustained in part.

### I.

The debtors, Roosevelt Smith and Annie Corbin Smith, filed a chapter 13 bankruptcy petition on October 10, 1986. On December 23, 1986, Associates National Mortgage Corp. ("Associates"), acting through its attorney, Joseph A. Goldbeck, Jr., Esquire ("Mr. Goldbeck") filed a proof of claim as a secured creditor. The proof states that Associates holds a first mortgage on the debtors' real property and a judgment in the amount of $30,440.78. The proof further states that the sum needed to cure the prepetition delinquency and reinstate the mortgage is $5,245.37, itemized as follows:

delinquent monthly payments and
  late charges                 $4,127.02

Margaret A. Lenzi, Delaware County Legal Assistance Ass'n, Chester, Pa., for

| | |
|---|---|
| filing and service | $ 183.50 |
| title report | $ 171.00 |
| sheriff's sale | $ 146.85 |
| notaries | $ 20.00 |
| legal fee | $ 600.00 |

On January 21, 1987, the debtors filed an objection to Associates' proof of claim. In the objection, the debtors asserted that under Pennsylvania law, 41 P.S. § 406, only reasonable and actually incurred attorney's fees may be charged to the debtors and that the $600.00 demanded in the proof of claim is unreasonable because the prepetition foreclosure action was "routine in nature, uncontested, and required only form pleadings." This was the only basis of the objection.

A hearing on the debtors' objection was conducted on April 9, 1987. In support of their objection, the debtors called Mr. Goldbeck as their sole witness. Mr. Goldbeck testified that he has been a practicing attorney for fourteen to fifteen years. During that time, he has handled approximately 10,000 foreclosure cases. He presently represents between thirty-five and forty-five lenders.

Mr. Goldbeck stated that he charged Associates $500.00 for representing it in the mortgage foreclosure proceeding in state court against the debtors and $100.00 for preparing the proof of claim filed in this court. He described the various tasks he performs in a routine, uncontested mortgage foreclosure action. Before filing a complaint in state court, he obtains and reviews a title report. He also reviews any pre-foreclosure notices that might be required under Pennsylvania law. See 41 P.S. § 403; 35 P.S. §§ 1680.402c, 1680.403c. He then prepares and files the complaint. The complaint is a standardized form which he has on a word processor and is completed by filling in certain necessary information which he obtains from his client. After filing the complaint and arranging for service, he reviews the sheriff's return of service to satisfy himself that proper service has been effected. If no response to the complaint is filed within time allotted under the Pennsylvania Rules of Civil Procedure, a secretary/paralegal in his office prepares the papers necessary to enter judgment and schedule a sheriff's sale. Mr. Goldbeck then reviews those papers before they are filed. Afterwards, he obtains and reviews a second title search to determine whether there are any additional lienholders of record who must be notified of the sheriff's sale; and then he prepares for the sheriff's sale by computing the amount he will bid on behalf of his client.

Mr. Goldbeck rarely keeps time records in his foreclosure cases. In foreclosure cases, he sets his fee based upon a fee structure which has been established by the Federal National Mortgage Association ("FNMA"). FNMA is the largest holder of mortgages in the United States. FNMA does not service its own mortgages; it contracts with various lending institutions to perform the servicing obligations. While the "servicers" handle the mortgage accounts and hire counsel if a foreclosure is necessary, FNMA dictates to the servicers the attorney's fee they may pay in a "routine" foreclosure action. At the time of this case, the standard fee set by FNMA for uncontested foreclosure was $500.00. Mr. Goldbeck employs the FNMA fee structure for all of his foreclosure work, even if he is representing a mortgage lender which has no relationship to FNMA, such as occurred in this matter. In non-foreclosure cases, where he might charge his clients by the hour, he stated that his hourly rate is $125.00.

Mr. Goldbeck readily agreed that the foreclosure case he handled against the debtors prior to their bankruptcy filing was "routine." The debtors filed no response to the foreclosure complaint, a default judgment was taken and the case presented no special issues requiring extra research or investigation. Because he charges his foreclosure clients by the case, rather than by the hour, Mr. Goldbeck kept no time records in Associates' state court action against the debtors and he does not know how much time he expended in the case.

In its case, Associates' sole witness was Lawrence T. Phelan, Esquire ("Mr. Phelan"). Mr. Phelan is a partner in a law firm which is engaged in an extensive

mortgage foreclosure practice, also representing between thirty-five to forty-five lending institutions, mortgage servicing companies and other investors. Mr. Phelan testified that his firm also adheres to the FNMA fee schedule and he corroborated that at the time of Associates' prepetition foreclosure action against the debtors herein the charge was $500.00 for an uncontested mortgage foreclosure action. He also stated that the fee would be based upon at least three to four hours of personal attorney time expended prior to attendance at a sheriff's sale; the three to four hours of attorney time is separate and apart from any time spent by secretary or paralegal staff.[1]

The only other evidence offered in the case was: (1) counsel's stipulation that the standard industry practice is to charge $500.00 for an uncontested mortgage foreclosure action and that the activities Mr. Goldbeck described are reasonable activities which are necessary in order to process a mortgage foreclosure action in state court; and (2) exhibit D–1, offered by the debtors, which consists of the pleadings that were filed in Associates' state court mortgage foreclosure action against the debtors.

## II.

As explained above, the attorney's fees sought by Associates falls into two categories: (1) fees for prepetition legal services in the state court mortgage foreclosure action and (2) fees for postpetition legal services for filing a proof of claim in the bankruptcy court. Each category requires separate analysis. I first consider the prepetition attorney's fees.

In their memorandum of law, the debtors assert that Associates' request for attorney's fees incurred prepetition is governed by 11 U.S.C. § 506(b).[2] Citing Judge Scholl's decisions in *In re Tashjian*, 72

B.R. 968, 974 (Bankr.E.D.Pa.1987) and *In re Jablonski*, 70 B.R. 381, 389 (Bankr.E.D. Pa.1987), the debtors contend that Associates has the burden of establishing that the fees demanded are (1) allowable under the terms of section 506(b); (2) provided for in the parties' agreement; (3) reasonable; and (4) allowable under state law. The debtors argue, as a threshold matter, that Associates cannot prevail because it produced no evidence that its claim is oversecured and did not introduce the note, mortgage or other writing which purports to provide a basis for the debtors' liability for attorney's fees incurred by Associates. Therefore, according to the debtors, Associates has not met its burden under prongs one and two under *Tashjian* and *Jablonski*.

Associates has two responses to the debtors' threshold argument. First, Associates argues that prior to their post-hearing submissions, the debtors' sole objection to the prepetition attorney's fees was that imposing a $500.00 fee is unreasonable for a routine, uncontested state mortgage foreclosure case and that the debtors should not be permitted to raise new objections at this stage of the case. Associates also argues that section 506(b) is not applicable because the proof of claim filed, which included $500.00 in attorney's fees incurred prepetition, set forth the prepetition arrearages, not an allowed secured claim within the meaning of section 506(b). *Cf. In re Fries*, 68 B.R. 676, 681–82 (Bankr.E.D.Pa. 1986) (an arrearage is not a claim within the meaning of 11 U.S.C. § 1325(a)(5)); *In re Small*, 65 B.R. 686, 689–91 (Bankr.E.D. Pa.1986) (neither 11 U.S.C. § 1325(a)(5)(B) nor 11 U.S.C. § 506(b) have any "pertinence" for prepetition arrearages as opposed to allowed secured claims).

In resolving the threshold arguments raised by the debtors, I accept Associates' position that the debtors have not timely asserted the applicability of section

---

**1.** The parties stipulated that another attorney with extensive foreclosure experience would offer testimony similar to Mr. Phelan's.

**2.** 11 U.S.C. § 506(b) provides:
To the extent that an allowed secured claim is secured by property the value of which, after

any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

506(b). After reviewing the debtors' written objection and their presentation at the hearing, I agree that the debtors appeared to accept Associates' basic entitlement to prepetition counsel fees and to limit their objection to the reasonableness of the $500.00 amount. I conclude that the debtors did not put Associates on notice that they challenged its entitlement to prepetition fees, under section 506(b) or otherwise, and that it would be inequitable to permit the debtors to assert their argument on the issue at this stage of the case.[3]

■ Thus, I must consider the debtors' argument that the $500.00 counsel fee for services rendered in the uncontested mortgage foreclosure case is not reasonable. The debtors cite Pennsylvania Act 6 of 1974, 41 P.S. § 406 as the applicable state law governing my evaluation of the challenged me. Since Associates does not dispute the debtors on this point, I will accept the parties' agreement on the issue.[4] 41 P.S. § 406 provides, in pertinent part:

> With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
>
> .    .    .    .    .
>
> (2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

The parties agree that the disputed $500.00 fee in this case was actually incurred by Associates. The only issue is its reasonableness under 41 P.S. § 406.

As one would expect in uncontested litigation, there are no reported decisions in Pennsylvania discussing the amount of attorney's fees which are "reasonable" and may be charged to a defendant who suffers a default judgment in a mortgage foreclosure case. Act 6 does not define the meaning of the term "reasonable" under 41 P.S. § 406.[5] One helpful reference point in construing section 406 is the line of cases in which Pennsylvania courts have evaluated, in quantum meruit, the value of services rendered by an attorney prior to his discharge by his client. *See generally In*

---

3. Therefore, I find it unnecessary to pass on the second argument raised by Associates. I do observe that Judge Scholl has retreated from the position taken in *Tashjian* and *Jablonski* with respect to section 506(b)'s applicability to prepetition attorney's fees when the chapter 13 debtor proposes to cure a mortgage delinquency pursuant to 11 U.S.C. § 1322(b)(5), and has reaffirmed his statement in *Small. See In re Nickleberry,* 76 B.R. 413, 420 (Bankr.E.D.Pa. 1987). In any event, I note further that neither party in this case moved the debtor's plan into evidence, so I do not know whether the debtors propose to cure their prepetition delinquency or pay in full Associates' allowed secured claim.

4. I note that if section 506(b) is not applicable where a debtor exercises the right to cure a mortgage delinquency under section 1322(b)(5), the debtor's liability for prepetition attorney's fees is properly a component of the debtors' prepetition default to the extent permitted under the parties' agreement and applicable state law. *Cf. In re Nickleberry,* at 420 (without reference to section 1322(b)(5), court concludes that the parties' contract and applicable state law must be analyzed when the creditor seeks prepetition attorney's fees in a chapter 13 case in which the debtor proposes to cure a prepetition delinquency). Applicable state law would be

Act 6 when the debt is secured by a residential mortgage obligation in an original principal amount of $50,000.00 or less. 41 P.S. § 101. Although there is no evidence regarding the terms of the obligation between the parties, their agreement on the applicability of Act 6 suggests that the obligation is a residential mortgage within the meaning of that statute.

5. Act 6 does provide that a *borrower* who prevails in an action arising under the statute is entitled to reasonable attorney's fees. 41 P.S. § 503(b); *see Gardner v. Clark,* 349 Pa.Super. 297, 503 A.2d 8 (1986). In such cases, Act 6 provides some guidance to the courts by stating that in determining the amount of the fee, a court may consider:

   (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case.
   (2) The customary charges of the members of the bar for similar services.
   (3) The amount involved in the controversy and the benefits resulting to the client or clients from the services.
   (4) The contingency or the certainty of the compensation.
   41 P.S. § 503(b).

*re Sacerdote,* 74 B.R. 487 (Bankr.E.D.Pa. 1987). In such cases, the courts have considered a number of factors, including: (1) the amount of time spent by the attorney; (2) the character of the services; (3) the difficulty and amount of skill called for; and (4) the attorney's normal rates of charge. *See Huffman's Estate,* 349 Pa. 59, 36 A.2d 640 (1944); *Robbins v. Weinstein,* 143 Pa.Super. 307, 17 A.2d 629 (1941); *Hanley v. Waxman,* 80 Pa.Super. 274 (1922).[6] These factors have been considered by at least one common pleas court in a mortgage foreclosure case subject to Act 6. *See First Eastern Bank v. Thomas,* 5 Pa.D. & C.3d 71 (C.P.Columbia 1977).

Another reference point is the traditional means for determining counsel fees established in federal cases in the Third Circuit; the lodestar method employed in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973), *appeal following remand,* 540 F.2d 102 (3d Cir.1976). As Judge Scholl pointed out in *Nickleberry,* at 422, the lodestar method is employed in determining attorney's fees in statutory fee-shifting cases. Statutory fee-shifting and contractual fee-shifting (as in the case at bench) have some similar purposes. The lodestar method itself is based on a two-step process: (1) the lodestar is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate for the attorney's services and (2) the lodestar may then be increased or decreased depending on additional factors involving case contingency or work product quality. Third Circuit Task Force, *Court Awarded Attorney's Fees,* 108 F.R.D. 237, 243 (1985) ("Task Force"). *See generally Pennsylvania v. Delaware Valley Citizen's Council,*

—— U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), *modified,* —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhardt,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

In comparing the Pennsylvania quantum meruit cases with the federal lodestar cases, I conclude that the standards for allowing fees under 41 P.S. § 406 and federal law are congruent. In essence, the factors employed in the state cases are those necessarily subsumed in the federal determination of "reasonable" hours and rates. *See* Task Force, 108 F.R.D. at 244.[7] *See also Gardner v. Clark,* 33 D. & C.3d 662 (C.P.Phila.1985), (in determining reasonable fees to be awarded under 41 P.S. § 503, court employs federal lodestar analysis), *aff'd,* 349 Pa.Super. 297, 503 A.2d 8 (1986). Since I perceive no substantive difference between federal and state law, I will, in the interest of convenience and uniformity, employ the lodestar analysis in assessing the debtors' attorney's fee obligation herein.

In concluding that reasonable attorney's fees must be measured by considering the number of hours reasonably expended by Associates' counsel at a reasonable hourly rate, I necessarily reject Associates' argument that the FNMA fee schedule is *per se* reasonable and should be accepted by this court. Associates suggests that lenders such as FNMA have an incentive to limit their fees to a reasonable amount because "they're the ones that pay it." N.T. 38. This argument, to the extent it permits a lender to define the term "reasonable", goes too far. This very controversy arises

---

**6.** In determining the value of legal services rendered in a quantum meruit case, the courts, in effect, are setting a reasonable attorney's fee. I recognize, though, that the analogy between a quantum meruit case and a case under 41 P.S. § 406 is not exact. In the former, the court is determining a fee to be paid to an attorney by a former client; in the latter, which involves a contractual fee-shifting provision, the prevailing plaintiff's fee is paid by the losing defendant. Therefore, there are other considerations used in setting fees in quantum meruit cases which are not relevant under 41 P.S. § 406.

**7.** Unlike the Third Circuit, the Fifth Circuit adopted, in 1974, a twelve factor scale for setting reasonable attorney's fees. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The *Johnson* test includes several factors equivalent to those considered by Pennsylvania courts in quantum meruit cases. The Third Circuit Task Force observed that "most commentators consider *Johnson* to be little different from *Lindy.*" 108 F.R.D. at 244.

because the lender is not paying its legal expenses; it is exercising its contractual right to pass its expenses on to its borrowers. This right is routinely exercised against mortgagors. Thus, the economic incentive to limit the attorney's fees incurred suggested by Associates is illusory. Moreover, 41 P.S. § 406 was enacted as a consumer protective provision to limit attorney's fees which a lender may require a borrower to pay in order to cure a default and save his home. *See In re Schwartz*, 68 B.R. 376, 378–79 (Bankr.E.D.Pa.1986). In enacting 41 P.S. § 406, it is extremely unlikely that the Pennsylvania legislature intended that the term "reasonable" be defined by the very lending institutions it sought to regulate. Thus, Associates' position is both internally inconsistent and contrary to the public policy embodied in 41 P.S. § 406. This is not to say that the FNMA fee schedule has no relevance to this controversy. The industry-wide standard is considered in assessing the reasonableness of the requested fees. Simply put, it is not conclusive.

Applying the foregoing principles to this case, I conclude on the record before me that the reasonable attorney's fee incurred by Associates in connection with the foreclosure action against these debtors was $375.00. In reaching this conclusion, I find, based on all of the testimony, that Mr. Goldbeck reasonably expended three hours of attorney time in the state court litigation on behalf of his client. In accepting the lower end of the three to four hour range suggested by the testimony, I have considered the following: (1) the absence of contemporaneous time records; (2) the fact that the case presented no special or unusual legal issues; (3) the use of form pleadings by Mr. Goldbeck and forms filled out by non-attorney staff; and (4) the fact that the foreclosure litigation terminated prior to sheriff's sale making it unnecessary for Mr. Goldbeck to perform various services which he ordinarily performs after the entry of judgment and which form the basis of his total $500.00 fee.[8] In light of Mr. Goldbeck's experience and expertise in the area, I accept as reasonable an hourly rate of $125.00.

Finally, I reiterate that, in this ruling, I am in no way questioning the right of counsel to charge his client his usual fee in a foreclosure case. The issue in this case is the lender-client's right to reimbursement of its legal expenses from a residential mortgage borrower. Applicable state law, 41 P.S. § 406, pronounces Pennsylvania public policy to be that the lender may charge its borrower only for "reasonable" attorney's fees incurred. In the particular circumstances of this case, I have found the reasonable attorney's fee to be $375.00.

### III.

The parties make the same initial arguments with respect to the postpetition attorney's fees sought by Associates as they did regarding the prepetition fees. The debtors contend that the lack of evidence that Associates' claim is oversecured and Associates' failure to introduce the note, mortgage or other writing providing a contractual basis for liability is fatal to

---

8. The debtors request that, in determining the number of hours Mr. Goldbeck reasonably expended, I consider evidence admitted in a contested matter in an unrelated bankruptcy case recently decided by another judge in this district, *In re LaFennis and Yvonne Davis*, No.. 86–0828S. The *Davis* case was decided along with several others, in an opinion issued under the name of *In re Nickleberry. See* note 3, *supra*. Based on the testimony in *Davis*, the debtors submit that Mr. Goldbeck only expended between 1.3 and 2.1 hours in Associates' state court action against the debtors herein.

I firmly decline the debtors' invitation to consider evidentiary matter which is outside the record. I do not see any basis which would permit me to consider evidence offered in an unrelated bankruptcy case and which has not been moved into the record which is before me. *See generally In re Paolino*, 75 B.R. 641, 645 n. 3 (Bankr.E.D.Pa.1987) (in adversary proceeding, court refuses to consider evidence from contested matter in same bankruptcy case); *In re Paolino*, 72 B.R. 555, 557 n. 5 (Bankr.E.D.Pa. 1987) (in contested matter, court refuses to consider evidence from another contested matter in same bankruptcy case). Obviously, though, the debtors are correct in assuming that their position would have been strengthened had they undermined Associate's assertion that its counsel spent three hours on this matter prepetition.

Associates' position; Associates again asserts that the debtors have not timely raised argument.

In rejecting the debtors' argument with respect to Associates' entitlement to prepetition fees, I have concluded that, prior to their post-hearing submissions, the debtors had conceded the creditor's basic entitlement to fees and were only questioning the amount to be permitted. As explained below, I find no such concession with respect to the debtors' challenge to the postpetition counsel fees.

The proof of claim filed by Associates provided no breakdown of its $600.00 attorney's fee request as between prepetition and postpetition. At the hearing, Mr. Goldbeck explained that $100.00 of the fee was assessed for the services he performed in preparing and filing the proof of claim in this bankruptcy case. The debtors then took the position that they had no legal obligation to reimburse Associates for any attorney's fees incurred in filing its proof of claim.

In these circumstances, I cannot agree with Associates that it would be unfair to permit the debtors to now challenge its entitlement to any postpetition counsel fees. While the debtors' written objection does not specifically refer to postpetition fees, this is because Associates' own proof of claim did not distinguish the $100.00 fee for filing the proof from the balance of the fee demand; it was certainly reasonable for the debtors to assume, as they did in their objection, that the entire $600.00 attorney's fee demanded was for prepetition

services. At the hearing, when the nature of the $100.00 attorney's fee was established, the debtors unequivocally asserted that there was no legal basis for the fee.

■ I also agree with the debtors that Associates' request for $100.00 in attorney's fees for postpetition services must be denied on the record before me.

Analysis of this issue might have been hampered somewhat by the failure of the parties to submit the debtors' chapter 13 plan into evidence. Thus, I do not know whether the debtors propose to pay in full Associates' allowed secured claim or whether they intend to cure a prepetition delinquency. Fortunately, this evidentiary gap is immaterial. In either event, the parties' contract governs whether Associates may recover its postpetition legal expenses.

If the debtors' plan is to pay Associates' claim in full, 11 U.S.C. § 506(b) is plainly applicable and section 506(b) requires that fees be "provided for under the agreement under which [the] claim arose." If the debtors are curing a prepetition delinquency under 11 U.S.C. § 1322(b)(5), and if, therefore, section 506(b) is not applicable,[9] the source of any right a mortgagee may have to recover attorney's fees incurred in the bankruptcy proceeding must similarly emanate from the parties' contract. *See In re Schwartz*, 68 B.R. at 379.[10]

In this case, Associates did not produce the writing on which it bases its right to reimbursement for postpetition legal expenses.[11] Since the debtors did not dispute

9.  *Cf. In re Fries*, 68 B.R. 676, 681–82 (Bankr.E.D. Pa.1986) (an arrearage is not a claim within the meaning of 11 U.S.C. § 1325(a)(5)).

10.  In *Schwartz*, a creditor, which had not filed a foreclosure complaint against the debtors prior to their bankruptcy, sought reimbursement from the debtors for counsel fees incurred in filing a motion for relief from stay in this court. I held that a motion for relief from stay was not a "legal action" within the meaning of 41 P.S. § 406(2) and therefore, pursuant to 41 P.S. § 406(3), the creditor could not charge the debtors for counsel fees in excess of $50.00. In *Schwartz*, it was unnecessary to decide whether other contested bankruptcy matters, such as proof of claim litigation, may constitute "legal action" within the meaning of 41 P.S. § 406(2).

Nor does this case present that issue since Associates filed a foreclosure complaint against the debtors prior to their bankruptcy, thereby rendering this case subject to 41 P.S. § 406(2) rather than 41 P.S. § 406(3). The main issues herein are (1) whether fee-shifting to the debtors is authorized by the parties' agreement and (2) if so, whether $100.00 in counsel fees for filing and preparing a proof of claim is reasonable. Since Associates does not prevail on the first issue, I do not reach the latter issue.

11.  Associates attached the mortgage as an exhibit to its post-hearing memorandum of law. Because the mortgage was not moved into evidence at the hearing, I have not considered it. Associates points out that the state court com-

Associates' entitlement to be reimbursed for prepetition legal expenses and all parties agreed that the amount had to be "reasonable," the absence of the writing was not significant in the parties' dispute over the $500.00 prepetition counsel fee. In contrast, however, the debtors have challenged Associates' right to any fees for postpetition legal expenses. It was therefore, incumbent upon the creditor to establish the contractual basis for its demand. In the absence of the agreement, I cannot determine whether the fee-shifting provision contained in the agreement is broad enough to obligate the debtors to reimburse Associates for legal expenses incurred in a bankruptcy proceeding. *See generally In re Nickleberry*, 76 B.R. 413, 424–25 (Bankr.E.D.Pa.1987) (court construes that particular mortgage to preclude fee-shifting for proceedings instituted by creditor in bankruptcy court).[12] Therefore, the debtors' objection to the postpetition counsel fees must be sustained.

An order consistent with this opinion will be entered.

### ORDER

AND NOW, this 21 day of July 1987, upon consideration of the proof of claim filed by Associates Mortgage Corp. ("Associates"), the debtors objection thereto and after notice and hearing and consideration of the parties' post-hearing written submissions, it is ORDERED that:

1. The sum of $375.00 is determined to be reasonable for the prepetition attorney's fees incurred by Associates.

2. The debtors' objection to Associates' request for attorney's fees for postpetition attorney's fees in the amount of $100.00 is sustained in full.

3. The claims docket shall be amended by the clerk to reflect that Associates is entitled to $5,020.37 for prepetition arrearages.

---

plaint was moved into evidence and that, while the mortgage was not attached as an exhibit to the complaint, the mortgage was incorporated in the complaint by reference, a practice allowed by Pa.R.Civ.P. 1019(g). I do not agree with Associates' suggestion that the incorporation of the mortgage by reference in a document moved into evidence made the mortgage part of the record in this proceeding. Nor do I find Rule 1019(g) determinative. The rules of civil procedure relating to pleading require-

ments are not rules of trial practice and have different purposes and policies than the rules of evidence.

**12.** I do not decide whether I agree with the *Nickleberry* court's construction of the contractual language therein. The mortgage agreement between these parties may contain different language.