**In re Timothy William SPIDEL, Debtor.**

**Bankruptcy No. 96–44143.**

United States Bankruptcy Court,
W.D. Missouri.

April 23, 1997.

Maurice B. Soltz, Soltz & Shankland, Kansas City, MO, for Debtor.

Kraig Kohring, Lathrop & Gage, Kansas City, MO, for Creditor.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtor Timothy William Spidel filed a Chapter 13 bankruptcy petition on December 16, 1996. A plan has yet to be confirmed. Creditor World Savings and Loan Association ("World Savings") filed a timely proof of claim for $54,092.70, including $5,804.80 [1] for "Foreclosure Fees." Mr. Spidel filed an objection to World Saving's proof of claim as to the foreclosure fees. A hearing was conducted on April 1, 1997. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, Mr. Spidel's objection is granted in part and overruled in part. The attorney's fees will be reduced by $1,622.50 and attorney's fees and expenses will be allowed in the amount of $4,182.30.

On March 15, 1994, Mr. Spidel and World Savings executed an Assumption Agreement, Release, and Modification of Note and Security Agreement (the "Note") in the principal

---

1. The proof of claim states that the "foreclosure fees" are $5,834.88, but the billing statements total documented fees in the amount of $5,804.80.

amount of $47,716.97.[2] The debt is secured by a duly recorded Deed of Trust against property located at 912–914 East 38th Street, Kansas City, Missouri (the "Property"), legally described as:

> The West ½ of Lot 18, WOODS, WALLER AND HOLTZ'S FIRST ADDITION, a Subdivision in Kansas City, Jackson County, Missouri, according to the recorded plat thereof.[3]

Mr. Spidel was unable to make the monthly payments as required by the Note and Deed of Trust. World Savings, therefore, began to exercise the remedies provided by the Note and Deed of Trust[4] around March of 1996. Mr. Spidel does not dispute that World Savings sent him a Notice of Default, and informed him of its intent to accelerate the loan. Mr. Spidel then contacted World Savings regarding reinstatement. While the parties were negotiating a reinstatement, World Savings continued to pursue acceleration and foreclosure. In preparing for a foreclosure sale, World Savings discovered a previously undisclosed lien which created a cloud on title to the Property. World Savings proceeded to resolve the title issue by July of 1996. During this same period Mr. Spidel and World Savings negotiated a reinstatement plan, and World Savings ceased its foreclosure activities.

By September of 1996, however, Mr. Spidel had defaulted on the reinstatement plan, and World Savings drafted another notice of default letter. World Savings again attempted to foreclose on the Property, but before a foreclosure sale could take place, Mr. Spidel filed this bankruptcy petition. In the proof of claim filed with this Court World Savings claims it has incurred $5,834.88 in attorney's fees and costs, and it has included that sum as part of the principal balance now owing on the debt. Mr. Spidel objects to the proof of claim arguing that the attorney's fees are excessive, that the claim for attorney's fees is not itemized, and that the charges are four to ten times the amount allowed to notice up a foreclosure sale.[5] At the hearing on this matter, Mr. Spidel's counsel called a witness who testified that the Federal National Mortgage Association ("FNMA") allows attorneys to be paid $550 from the proceeds of the sale for a foreclosure sale.

World Savings attached an itemized fee statement to its Suggestions in Opposition to Debtor's Objection to Claim.[6] It argued at the hearing that the fees were incurred for matters other than noticing up a foreclosure sale, and that there is no allowed amount of attorney's fees in bankruptcy, as long as the fees are reasonable and necessary.

There are two issues to be decided in this claim's objection. The first issue is whether the loan documents granted World Savings attorney's fees and costs. Before deciding this issue the Court would ordinarily have to decide if World Savings was oversecured. But in this case Mr. Spidel claims the value of the Property is $73,000, and he does not object to $48,258.15 of World Savings' claim. Neither party, therefore, disputes that there is substantial equity in the Property. The second issue is whether the fees and costs incurred were reasonable and necessary to World Savings' efforts to collect under the terms of the loan documents. A discussion of attorney's fees and costs for secured creditors begins with section 506(b) of the Bankruptcy Code (the "Code").

The Code allows an oversecured creditor with an allowed claim to collect interest, attorney's fees, and costs if it has secured that right in the security instrument:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees,

---

2. Doc. # 17, Ex. A.

3. *Id.*, at ¶ 3.

4. *See* Doc. # 17, Ex. B, RIDER TO DEED OF TRUST ADJUSTABLE MORTGAGE LOAN (MISSOURI), p. 3 ¶¶ 8 and 18.

5. Doc. # 13.

6. Doc. # 17, Ex. O–1.

costs, or charges provided for under the agreement under which such claim arose.[7] Thus, before a secured creditor is paid attorney's fees or costs on its claim, it must satisfy the following requirements: (1) the claim must be an allowed secured claim; (2) the claim must be oversecured; (3) the security instrument must allow for attorney's fees and costs; and (4) the fees must be reasonable.[8] The first two requirements are not controversial in this case. A secured claim is presumed allowed, unless a party in interest objects.[9] Mr. Spidel does not object to World Savings' claim save for the attorney's fees and costs, therefore, despite the outcome of this claim's objection, the claim is allowed in the amount of at least $48,258.15. There is likewise no dispute that the Property is oversecured. It is valued at $73,000 and the World Savings' claim for attorney's fees and cost is $5,834.88. At a minimum there is approximately $18,906.97 in equity in the Property. Thus, the first and second requirements of 506(b) are satisfied.

█ As to the third requirement, section 506(b) allows attorney's fees and costs only if the security instrument so provides. I, therefore, begin with the language found in the loan documents.

Mr. Spidel purchased the Property from the previous owners and assumed their obligation to World Savings by signing the Assumption Agreement, Release and Modification of Note and Security Instrument.[10] That document, which was duly notarized, required the parties to:

> expressly warrant and represent that they have read, analyzed and consulted with advisors deemed appropriate, including legal counsel, regarding the effect and import of the terms and conditions of the Note, Security Instrument, any Riders to Note and/or Security Instrument and this Agreement, and understand the content and effects of the same.[11]

A rider to the Deed of Trust and the Adjustable Mortgage Loan was signed on June 3, 1985, by the previous owners. The rider amended the Adjustable Mortgage Loan to read as follows:

> 8. COSTS OF COLLECTION OR ENFORCEMENT. In the event Lender takes any action to collect or enforce any provision of the Note, Borrower will pay to Lender on demand all costs and expenses incurred by Lender with respect to the same including, without limitation, reasonable attorney's fees to the extent not prohibited by applicable law, and court costs, whether or not a lawsuit is brought.[12]

The rider, likewise, amended the Deed of Trust to provide for the payment of attorney's fees and costs.[13] Taken together, the Note and Deed of Trust provide that World Savings is entitled to its costs and the reasonable attorney's fees it incurred in either collecting the monthly payments or foreclosing on the Property once Mr. Spidel failed to make the monthly payments. I, therefore, find that the third requirement of section 506(b) is satisfied. The costs and reasonable fees may be allowed against the equity in the Property.[14]

█ Section 506(b), however, also requires me to find that the attorney's fees are reasonable. The reasonableness determination is solely within the discretion of the Court.[15] Mr. Spidel argues that the fees are excessive based upon expert testimony that

---

7. 11 U.S.C. § 506(b).

8. *In re Lund*, 187 B.R. 245, 250 (Bankr.N.D.Ill. 1995).

9. Fed.R.Bankr.P. 3001(f); *In re Ronecker*, 204 B.R. 552, 554 (Bankr.E.D.Mo.1997).

10. Doc. # 17, Ex. A.

11. *Id.*, at ¶ 8.

12. *Id.*, at Ex. B, RIDER TO DEED OF TRUST ADJUSTABLE MORTGAGE LOAN (MISSOURI) ¶ 8 pg. 3.

13. *Id.*, at Ex. B, RIDER TO DEED OF TRUST ADJUSTABLE MORTGAGE LOAN (MISSOURI) ¶ 18 pg. 3-4.

14. *In re Ronecker*, 204 B.R. 552, 555 (Bankr. E.D.Mo.1997).

15. *In re Kroh Bros. Dev. Co.*, 105 B.R. 515, 520 (Bankr.W.D.Mo.1989) (holding the Court has very broad discretion in determining the amount of attorney's fees to be awarded); *In re Mills*, 77 B.R. 413, 419 (Bankr.S.D.N.Y.1987).

an attorney should be able to notice up a foreclosure sale for approximately $550. World Savings argues that its fees were incurred over a long period of time in its efforts to collect its debt, not just from noticing up a foreclosure sale. I note that the individual who prepared World Savings' proof of claim did label the charges as "Foreclosure Fees."[16] The Note, however, provides that World Savings is entitled to its Costs of Collections or Enforcement.[17] The costs of collection in the Note are deemed to be "any action to collect or enforce any provision of the Note."[18] By its plain language, this provision allows for more than the costs of a foreclosure sale. I find, therefore, that the Note entitled World Savings to its reasonable costs of collections. According to Mr. Spidel's expert witness, the reasonable costs of collections in a foreclosure should be based upon the fees allowed by FNMA.

In *In re Smith*[19] the Court discussed the distinction between the standard fees allowed by FNMA and fees allowed pursuant to section 506(b). The Court explained that FNMA, the largest holder of mortgages in the United States, does not service the mortgages it holds.[20] Rather, it contracts with other lending institutions to provide loan servicing and, if necessary, to hire attorneys to conduct routine foreclosures.[21] FNMA, therefore, sets a standard fee lending institutions may pay their attorneys for uncontested foreclosures.[22] The *Smith* Court found that the FNMA schedules are not per se reasonable in a bankruptcy case, and it refused to allow an attorney the full fee allowed by FNMA for a routine foreclosure when the attorney, who does not keep time records for foreclosures, testified that he spent approximately three hours on this case, and his

hourly rate is $125.[23] The Court also relied upon the following factors in determining if a foreclosure is routine: (1) whether there are any special legal issues; (2) whether the attorney kept time records; (3) whether the attorney used form pleadings; (4) whether the borrower contested the foreclosure; and (5) whether a foreclosure sale actually took place.[24] World Savings argues that this was not a routine foreclosure sale, and that it is not required to use the FNMA fee schedule. Applying *Smith* factors to the case at hand demonstrates that the foreclosure effort in this case was not routine.

There were some special legal issues which distinguish this case from other foreclosures. Mr. Spidel negotiated a reinstatement plan during the initial collection effort. Moreover, that negotiation involved a number of meetings and phone calls between counsel for World Savings and Mr. Spidel and his counsel. And, World Savings discovered a cloud on title that had to be resolved before a foreclosure sale could take place. Finally, Mr. Spidel defaulted under the terms of the reinstatement plan, necessitating another collection effort that was stayed by the filing of the bankruptcy petition. In all, counsel for World Savings was actively involved in a collection effort regarding this Property beginning March 18, 1996.[25] Counsel for World Savings kept detailed and accurate time records that itemized all the services provided. Due to the complicated reinstatement negotiations, all the documents were drafted and no form pleadings were used. Mr. Spidel initiated the reinstatement negotiations to forestall the foreclosure, if not contest it. And the bankruptcy filing certainly was a way of contesting the foreclosure. Neither effort at foreclosure resulted in a sale, but

16. World Savings' Proof of Claim filed February 18, 1997, Ex. A.

17. Doc. # 17, Ex. B, RIDER TO DEED OF TRUST ADJUSTABLE MORTGAGE LOAN (MISSOURI) ¶ 8 pg. 3.

18. *Id.*

19. *In re Smith*, 76 B.R. 426, 428 (Bankr.E.D.Pa. 1987).

20. *Id.*

21. *Id.*

22. *Id.*

23. *Id. See also In re B & W Management, Inc.,* 63 B.R. 395, 401 (Bankr.D.Col.1986) (stating that even if parties stipulate to a fee in the contract, that stipulation is still subject to the reasonableness requirement of section 506(b)).

24. *Id.,* at 432.

25. *Id.,* at Ex. O–1.

the fact World Savings had to repeat its attempt to foreclose negates any savings it realized by not having to complete one sale. For all of these reasons, I find that the foreclosure was not routine, and that World Savings is entitled to fees pursuant to its Note, Deed of Trust, and Section 506(b). I also find that the FNMA fee schedule for routine foreclosures used by lending institutions that service its loans is not binding on this Bankruptcy Court.

■ World Savings is still being represented by counsel to protect its interest in this bankruptcy proceeding, therefore, some of the fees at issue here were incurred post-petition. I have previously found in *In re Thomas* that an oversecured creditor is entitled to its attorney's fees incurred during the course of a bankruptcy case if the legal work is necessary to protect its lien.[26] In this case, Mr. Spidel has been in default on the Note since October of 1995.[27] World Savings has twice tried to foreclose on the Property. Mr. Spidel admits on his bankruptcy schedules that he is in arrears to World Savings in the amount of $2,400.[28] He has yet to confirm a plan. World Savings was, therefore, justified in incurring attorney's fees as a cost of collection and to protect its lien during the course of this bankruptcy case. I find that any fees incurred after December 16, 1996, were costs of collection and enforcement, even though such fees are not directly related to a foreclosure sale.

■ Finally, Mr. Spidel argues that the fees are unreasonable because they are excessive and duplicative. Any creditor seeking reimbursement for attorney's fees in a bankruptcy case must do so in a supporting document that accurately and thoroughly describes the nature of the legal service provided in "sufficient detail to allow the Court to determine that the services provided are directly related to the services and fees contemplated under the agreement."[29] The document must also identify the persons providing the service and the usual hourly billing rate of those persons.[30] I find that the billing statement submitted by World Savings' counsel meets those requirements. Moreover, a sufficiently detailed billing statement allows the Court to determine if the attorney provided duplicative services by multiple members of the law firm, or whether the firm conducted numerous conferences.[31] The Court has the discretion to reduce fees if it finds that they are duplicative, unnecessary or excessive.[32] The total charges incurred were $7,300.30. From that total counsel voluntarily agreed to reduce World Savings' bill by $1,495.50. A careful review of the billing statements in this case reveals several instances in which one or two partners and a paralegal all reviewed documents and held conferences regarding the collection efforts. In each of those instances, I have discounted the fees by 50 percent for a total discount of $1,655.50. In addition, I find that a paralegal, who bills at the rate of $65 an hour, charged 13.5 hours related to preparing acceleration correspondence in the first scheduled foreclosure sale, 8.2 hours preparing correspondence related to the second foreclosure sale, and .8 hours for unspecified work on "foreclosure matters." The total of those charges is $1,462.50. I find that that is an unreasonable amount of time for correspondence, and these charges will not be allowed. The total reduction from the actual fee of $7,300.30 is, thus, $3118. But counsel for World Savings had discounted

---

**26.** *In re Thomas*, 186 B.R. 470, 477–78 (Bankr. W.D.Mo.1995). *See also, In re Mills*, 77 B.R. 413, 418 (Bankr.S.D.N.Y.1987) (holding that if the agreement so provides, a secured creditor is entitled to the reasonable fees incurred in defending its claim in bankruptcy).

**27.** World Savings' Proof of Claim filed Feb. 18, 1997, Ex. A.

**28.** Doc. # 2.

**29.** *In re Ronecker*, 204 B.R. 552, 555 (Bankr. E.D.Mo.1997).

**30.** *Id.*

**31.** *In re Lund*, 187 B.R. 245, 251 (Bankr.N.D.Ill. 1995). *See also In re Ronecker*, 204 B.R. 552, 555 (Bankr.E.D.Mo.1997) (where the Court found that ministerial or quasi legal services, such as reviewing loan documents, updating databases, reviewing the status of a case, or internal telephone conference calls were not compensable under section 506(b)).

**32.** *Id.*, at 254.

their fees by a total of $1,496.50 at the time of the billing. I, therefore, find that World Savings' proof of claim should be further reduced by the sum of $1,622.50.

In summary, World Savings is entitled to the reasonable attorney's fees incurred in collecting, enforcing, and defending its lien. In this case, reasonable attorney's fees and costs are $4,132.30. Although the actual cost of trying a routine foreclosure sale would have been substantially less, this was not a routine sale, as Mr. Spidel's efforts to delay the sale caused World Savings to incur additional costs. Since the loan documents and applicable law allow World Savings to be paid its costs of collection, the charges, except as reduced by this Opinion, are includable in World Savings' claim. Mr. Spidel's objection to the claim of World Savings is, therefore, sustained in part and overruled in part. An Order in accordance with this Memorandum Opinion will be entered this date.