**In re ELK CREEK SALERS, LTD., Debtor.**

No. 02–30469–JWV.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

March 28, 2003.

Norman E. Rouse, Joplin, MO, for Debtor.

Danny R. Nelson, Springfield, MO, for First National Bank of Mt. Vernon.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

The issue before the Court at this time is whether First National Bank of Mt. Vernon ("First National" or "Bank") should be able to recover its legal fees and expenses from the Debtor or the Debtor's property for actions undertaken by First National in these Chapter 12 bankruptcy proceedings.[1] The issue is important not simply because of the fees that have already been incurred, but because of the fees that are likely to be incurred in future months.

First National filed an Application (Document # 66) on December 31, 2002, seeking approval of $9,125.00 in legal fees and $1,248.84 in expenses for the period of February 25, 2002, through December 31, 2002. The Debtor, Elk Creek Salers, Ltd., ("Debtor" or "Elk Creek") filed an Objection (Document # 76) to the Application. Evidence was presented and arguments were heard by the Court in Carthage, Missouri, on February 27, 2003, and the Court took the matter under advisement.

For the reasons stated below, the Court will allow a portion of the fees and expenses sought by First National and will disallow a portion.[2]

## FACTUAL BACKGROUND

Some background facts are necessary to an understanding of the present situation. On April 1, 1994, Elk Creek entered into a Lease with Option to Purchase ("Lease") with "Stella M. Riddle & Heirs," ("Riddle") under the terms of which Elk Creek rented a 237–acre farm or ranch property ("Riddle property") in Lawrence County, Missouri, for $4,000.00 a year. The Lease also gave Elk Creek an exclusive option to purchase the Riddle property for $115,000, by paying $10,000.00 as a down payment and executing a note and deed of trust for the balance. Then, on January 3, 1996, Elk Creek borrowed $61,200.00 from First National. To secure the $61,200.00 promissory note, Elk Creek assigned the Lease with Riddle to First National, and the Assignment was recorded in the Recorder of Deeds office in Lawrence County on January 4, 1996.[3] The Assignment provided, among other things, that Elk Creek would not, without the prior written consent of First National, sublet any portion of the rented premises "or modify, terminate or surrender the Lease." (¶ 4, Assignment). It is not clear whether this provision was intended to prevent Elk Creek from exercising its option to purchase the property without the Bank's consent, but in any event Elk Creek did, on or about March 1, 2001, purchase the property from Riddle. Elk Creek granted Riddle a security interest in the property by executing a Deed of Trust on January 31, 2002, which was subsequently recorded in the public

---

1. The Debtor filed its Chapter 11 bankruptcy petition on April 24, 2002. The case was converted to Chapter 12 on the Debtor's Motion on June 17, 2002.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 157. This

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

3. Other real property owned by the Debtor was also pledged to secure the note.

records on February 1, 2002.[4]

Apparently, First National was not notified of Elk Creek's purchase of the property or of the granting of a security interest in the property to Riddle by Elk Creek. Accordingly, First National did not—and has not to this day—received any other security interest in the property, other than the Assignment of the Lease. On December 10, 2002, the Bank initiated an Adversary Proceeding (No. 02–6078) by filing a Complaint to Determine Validity, Priority and Extent of Liens against the Debtor and Richard M. Riddle, the Personal Representative of the Estate of Stella M. Riddle ("Riddle Estate"). The thrust of the Adversary Complaint is to determine (a) whether the Riddle Estate has a valid, perfected lien on the property, (b) whether First National has an equitable lien on the property, and (c) which of the two entities—the Riddle Estate or First National—has the superior security interest in the property.

This, then, brings us to the question of the attorney fees. First National relies on two different attorney fee provisions, one in its $61,200.00 promissory note and the other in the Lease that was assigned to the Bank. The attorney fee provision in the promissory note reads:

COLLECTION COSTS AND ATTORNEY'S FEES: I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable

attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

The attorney fee provision in the Lease is found in Paragraph 10 thereof:

10. In the event of the Lessor or Lessor's [sic] default, which may require the other party to bring legal action to enforce any provision of this agreement, Lessor or Lessee shall pay to the other a reasonable attorney's fee incurred by that party due to Lessor or Lessee's default and/or breach of this agreement.

The Application for attorney fees and expenses filed by First National includes an itemization of services rendered. That itemization reflects legal services provided to the Bank in connection with foreclosure proceedings that were commenced against other of the Debtor's collateral pre-petition, collection actions that were taken before the bankruptcy was filed and in the bankruptcy proceedings, various other matters, and preparation of the Adversary Complaint.

## DISCUSSION

Section 506(b) of the Bankruptcy Code allows oversecured creditors to recover certain post-petition costs. It states:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under

---

**4.** These dates and facts are taken from the Complaint to Determine Validity, Priority and Extent of Liens filed by the Bank against the Debtor and the Personal Representative of Stella M. Riddle. The Court will take these allegations in the Complaint at face value, and does not intend that anything said in this Order should be construed as making a determination of the truth or falsity of those allegations. Those issues are for another day.

the agreement under which such claim arose. 11 U.S.C. § 506(b).

■■■ To recover attorney fees under § 506(b), a creditor must establish: (1) that it is oversecured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorney fees. *First Western Bank & Trust v. Drewes (In re Schriock Construction, Inc.)*, 104 F.3d 200, 201 (8th Cir.1997). In the absence of an agreement providing for the recovery of fees, costs, and other charges, post-petition interest is the only added recovery available to the secured creditor. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The right to recover attorney fees in bankruptcy proceedings is a matter of federal law; it is not dependent on state law. *See In re McGaw Property Management, Inc.*, 133 B.R. 227, 230 (Bankr.C.D.Cal.1991) ("Section 506(b) therefore, establishes a federal right to reasonable attorney's fees for the oversecured creditor irrespective of state law.").

In this case, the parties agree that First National is oversecured. The Debtor has previously asserted, in fact, that First National is oversecured even if it is found to not have a security interest in the Riddle property, so the oversecured status of the Bank is not at issue. Similarly, the Debtor has not asserted that the attorney fees sought by counsel for the Bank are unreasonable. The only disputed issue before the Court is whether the agreements between the Bank (and Riddle) and the Debtor authorize the Bank to recover attorney fees and costs in prosecuting the Adversary Complaint to determine whether the Bank has a lien on the Riddle property and, if so, whether it is superior or junior to the Deed of Trust held by the Riddle Estate.

The resolution of this dispute turns on the language used in the attorney fee provisions of the agreements, so we must begin with an examination of that language. *In re Spidel*, 207 B.R. 882, 885 (Bankr.W.D.Mo.1997).

■ The attorney fee provision in the $61,200 promissory note provides that the Debtor agrees to pay "all costs of *collection, replevin or any other or similar type of cost* if I am in default," and to pay attorney fees "[i]f you [Bank] hire an attorney *to collect this note . . .* " (emphasis added) It further provides that, in the event of bankruptcy, the Debtor also agrees to pay "the reasonable attorney's fees and costs you [Bank] incur *to collect this debt* as awarded by any court exercising jurisdiction under the Bankruptcy Code." (emphasis added)

In the Court's view, this provision restricts the Bank's ability to recover its attorney fees to those actions that are taken to *collect* the debt owed to the Bank. The note limits the Debtor's obligation to pay attorney fees to *collection* actions, including replevin actions. "Collect" is defined as "to claim and receive in payment or fair recompense" and "to present as due and receive payment for." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Unabridged, 1981). As generally understood by lawyers, "collection actions" encompass such things as filing lawsuits, obtaining attachments and garnishments, and undertaking replevins and repossessions. *See Missouri Creditors' Remedies* (5th Ed., 2001).

The Court has reviewed several reported cases related to the attorney fee provisions of various credit instruments, and as one might imagine there are no cases directly on point with the facts of this case. However, the cases do make clear that the more expansive the attorney fee provision in the underlying document, the more like-

ly it is that other costs—not just collection costs—will be allowed to the secured creditor. In *In re Hyer*, 171 B.R. 67 (Bankr. W.D.Mo.1994), Judge Koger of this Court dealt with this issue. There, the promissory note contained a provision similar to that in the instant case ("The Bank shall...be entitled to recover reasonable attorneys' fees incurred in the collection of this Note"), but the security agreement signed by the debtor contained very broad and expansive language requiring the debtor to pay the bank's attorneys' fees "with respect to *any* suit or proceeding (bankruptcy or otherwise) relating to this Agreement, the Collateral *or any other agreement, guaranty, note, instrument or document...*, or to attempt to en- *force...any security interest in any of the Collateral...*" (emphasis added). If First National's promissory note in this case contained such all-encompassing language, the Court would have no difficulty in finding that the Bank would be entitled to the fees that it is incurring in the Adversary Proceeding against the Debtor and the Riddle Estate. However, the note does not contain such broad, all-encompassing language.

One of the cases relied on by the Bank is *In re Boulders on the River, Inc.*, 169 B.R. 969 (Bankr.D.Or.1994). Despite its intriguing and alluring name, *Boulders on the River* is not comparable on the facts to this case and does not carry the day for the Bank. In that case, as in the *Hyer* case, the bank's attorney fee provision was broad and all-encompassing. It stated, in pertinent part: "Maker promises to pay all costs, expenses and attorneys' fees incurred by the holder hereof in the exercise of *any remedy...*, in *any proceeding* for the collection of the debt,...in *protecting or sustaining the lien or priority* of said Deed of Trust or said other security..." *Boulders*, 169 B.R. at 975. (emphasis added) Once again, if the Bank's documents

contained such sweeping language here, the Court would have no difficulty in awarding First National its fees incurred in the Adversary Proceeding, now or in the future. The Court has also reviewed the other cases cited by counsel for First National and finds that they are of no assistance to the Bank. *In re Ronecker*, 204 B.R. 552 (Bankr.E.D.Mo.1997), involved a note with broader language than was used in First National's note in this case. *In re Waterman*, 248 B.R. 567 (8th Cir. BAP 2000), involved a dissolution of marriage separation agreement and is therefore inapposite; even if that case does have application, the very broad language used in the separation agreement allowed for the recovery of "*all* attorneys' fees expended in this matter." *Waterman*, 248 B.R. at 572.

■ In short, the plain language of the Bank's note does not encompass other actions that might be undertaken by the Bank to, for example, establish that it has a lien on certain property or that that lien is superior to the lien of another secured creditor. The language of the Bank's note is restrictive, not expansive. It restricts the Bank's recovery for attorney fees to actions aimed at collecting the note. While the Adversary Proceeding might very well eventually assist the Bank in getting paid the full amount it is owed on the note, the Adversary Proceeding in and of itself is not an action to *collect* on the note. It is an action to enhance the Bank's secured position and perhaps give it greater leverage and greater ability to collect all that it is owed. As counsel for the Debtor points out, the Bank is presently oversecured—a point the Bank does not deny— and it is not necessary that the Adversary Proceeding even be prosecuted at this time. Inasmuch as the Bank prepared the note, and such boilerplate language as the attorney fee provision is not normally subject to negotiation, the language must be

construed against the Bank. *Omega Healthcare Investors, Inc. v. Lantis Enterprises, Inc.*, 256 F.3d 774, 777 (8th Cir. 2001).

■ First National's second line of argument is that the Lease that was assigned to the Bank contained an attorney fee provision that would support an award of reasonable attorney fees incurred in the Adversary Proceeding. This argument can be quickly disposed of. Paragraph 10 of the Lease provides that one party's attorney fees may be recovered from the other party if the other party is in default and that default requires the first party to bring legal action "to enforce any provision of this agreement, . . ." The short answer to this contention is that the Adversary Proceeding brought by the Bank was not brought to enforce any provision of the Lease—it was brought to establish that the Bank, by virtue of the assignment to it of the Lease, possesses an equitable lien on the Riddle property and that that equitable lien is superior to the Deed of Trust granted to Riddle.[5] Therefore, the Bank is not entitled to recover its fees pursuant to the attorney fee provision in the Lease.

In summary, then, the attorney fee provisions of the Bank's promissory note and the Lease which the Debtors entered into with Riddle in 1994 do not support the award of attorney fees to First National incurred in the prosecution of the Adversary Proceeding to establish First National's claim to an equitable lien, superior to the Deed of Trust held by the Riddle Estate.

Turning now to the Bank's Application, we find that, as asserted by the Debtor, approximately seven hours of the itemized time related to counsel's work on the Adversary Proceeding.[6] Therefore, the Court will reduce the request for fees by $1,155.00, to $7,970.00. It is not possible to determine what part of the Bank's expenses are related to the Adversary Proceeding, except for the filing fee of $150.00, so the request for reimbursement of expenses will be reduced by that amount, to $1,098.84.

Therefore, it is

**ORDERED** that First National Bank of Mt. Vernon's Application for Allowance of Attorneys Fees and Expenses (Document # 66) be and is hereby APPROVED IN PART and DENIED IN PART, as follows:

A. That portion of the Application requesting reimbursement of fees and expenses for legal services rendered in connection with the Adversary Proceeding, Case No. 02–6078, be and is hereby denied in the amounts of $1,155.00 in fees and $150.00 in expenses.

B. The remainder of the request, for $7,970.00 in fees and $1,098.84 in expenses, be and is hereby approved and such amounts may be included in the balance

---

5. We need not reach the Debtor's argument that the Lease and the attorney fee provision therein are no longer of any force or effect because the Debtor exercised its option to purchase the Riddle property and thereby effectively terminated the Lease. For purposes of the pending matter, we will assume that the Lease still has validity.

6. Some of the time entries reflect work done on the Adversary Proceeding as well as work done on other matters, without a breakdown between the enumerated items. In other instances, the entries have been redacted in whole or in part. As a result, some approximations must be made. Mr. Nelson, the Bank's counsel, advised the Court that his time was billed at $165.00 an hour, a rate which the Court finds to be perfectly reasonable.

due on the Debtor's note and paid through the Debtor's Chapter 12 Plan.