**In re Earl ZIEGLER, Debtor.**

**Bankruptcy No. 87–05545T.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 1, 1988.

Craig R. Tractenberg, Abraham, Pressman & Bauer, P.C., Philadelphia, Pa., for debtor.

**68**

Mark Malkames, Allentown, Pa., for Hill Financial Sav. Ass'n.

Frederick L. Reigle, Reading, Pa., Trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Hill Financial Savings Association ("Hill") has mounted a dual attack on Earl Ziegler's ("debtor") chapter 13 case by filing objections to confirmation and by requesting relief from the automatic stay. Because the keystone of debtor's plan is a contingent, unliquidated lawsuit which is also debtor's offer of adequate protection, we find that the funding of the plan is too speculative to fulfill the requirements of 11 U.S.C. § 1322 and that debtor's offer of 11 U.S.C. § 362(d)(1) adequate protection is insufficient.

This is one of those rare cases in which the parties have stipulated to many salient facts. Hill holds a second mortgage secured only by debtor's residential real property. The parties do not dispute that debtor possesses significant equity in this property. Hill filed a § 362(d)(1) motion requesting relief from the automatic stay and alleging as "cause" that it was not adequately protected. Debtor responded that the pendency of a contingent, unliquidated state court lawsuit in which debtor is plaintiff serves to provide adequate protection. *See Ziegler v. Great Atlantic and Pacific Tea Co.*, Lehigh Co. Ct. No. 86–C–239 ("lawsuit"). The debtor concedes that he is not assured of a recovery in the state lawsuit.

This same lawsuit figures prominently in Hill's objection to the confirmation of debtor's amended plan ("plan"). The plan[1] proposes to pay Hill all future monthly payments as they fall due, and to pay $5.00 per month for 36 months towards the $12,-718.40 pre-petition arrears. The balance of the mortgage arrears are to be paid within three years with a final balloon payment from the proceeds of the lawsuit. Not surprisingly, Hill filed objections.

■ The § 1322 issue in this case is whether a debtor should be allowed to cure a pre-petition default on a mortgage secured only by the debtor's residence with a pledge of proceeds from a contingent, unliquidated state court lawsuit. We hold that this type of speculative funding fails to fulfill the requirements of § 1322.

We begin our analysis with the Code, which provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \* \* .\* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(2), (b)(5).

Subsection (b)(5) is often read in conjunction with subsection (b)(2) for the proposition that curing a default within a reasonable time will not impermissibly modify the rights of a mortgage holder whose interests are secured only by debtor's real property.

■ Before reviewing the law and facts, we must confront the question of the assignment and shifting of the burden of proof. Our colleague, Judge Fox, has recently reviewed this highly ambiguous issue. *In re Fries*, 68 B.R. 676, 680 (Bankr. E.D.Pa.1986). Addressing the burden of proof in a § 1325(b)(1)(B) context, Judge Fox placed the initial burden of producing

---

1. On May 25, 1988, we signed an order of interim confirmation allowing the trustee to commence payments to Hill prior to final approval of the plan.

evidence on the objecting creditors, and the ultimate burden of persuasion on the debtor. Judge Fox based his conclusion on analysis of the nature of the § 1325 disposable income text. Because we find structural similarities between § 1325 and § 1322(b),[2] we find the *Fries* analysis applicable and hold that in a § 1322(b) context, the initial burden of production falls on the creditor, with the ultimate burden of persuasion resting on the debtor.

Proof issues are discussed generically in a highly analogous bankruptcy decision. *Georgia Fed'l. Savings & Loan Assn. v. Anderson (In re Anderson)*, 21 B.R. 443 (Bankr.N.D.Ga.1981). In *Anderson*, the court firmly rejected the notion that a pending lawsuit could provide the "regular and stable" income necessary to confirm a plan. *Id.* at 445.[3] The court explained:

> The debtor has presented no evidence which indicates that the claim is anything other than speculative in substance and remote in time. At least, it is not an asset which can be liquidated in a reasonable time that can provide the regular and stable income required to propose and confirm a plan, or to provide adequate protection under 11 U.S.C. § 362(d) and (e). In reality, it is not an asset in this chapter 13 case.

*Id.* at 445.

Debtor attempts to distinguish *Anderson* factually, arguing that the reason that the proceeds from this lawsuit fall outside the vista of § 1322 is that the *Anderson* debtor had merely proposed the filing of a lawsuit to fund the plan—it was not *pending* at the time of the petition. We reject this distinction because we face the same evidentiary concerns identified by the *Anderson* court. Debtor's claim—irregardless of the magnitude of the demand—is speculative and remote. We have been offered the state court pleadings, but we cannot, as debtor seems to suggest, take judicial notice of debtor's possibilities of success in this lawsuit.[4]

The burden of proof must be considered in light of the type of modification of rights permissible under § 1322(b)(2) and the "reasonable time" requirement of § 1322(b)(5). A key question is whether or not the "balloon" nature of this final payment impermissibly modifies Hill's rights. Both parties note *Fishman v. Epps (In re Epps)*, 2 C.B.C.2d 97, 6 B.C.D. 379, 6 Bankr.L.Rep. para. 67,438 (Bankr.S.D.N.Y. 1980). *Epps* suggests that a proposed balloon payment at the end of a three (3) year plan period, when it is the only proposed payment to the secured mortgage holders, violates § 1325(a)(5). Our factual scenario is significantly different, however, since debtor has been making preconfirmation payments.[5] Closer on point is the decision in *In re Schilling*, 64 B.R. 319, Bankr.L. Rep. para. 71,452 (Bankr.D.Vt.1986). The *Schilling* court held that a promise to pay a small amount each month on a five (5) year plan, with a final balloon payment from the sale of a residence, is both an unreasonable cure under § 1322(b)(5) and impermissibly modifies the secured creditor's rights under § 1322(b)(5). *Id.* at 320. The instant case, however, involves relatively substantial monthly payment.

In the instant case, Hill has met its initial burden by identifying its interest in the

**2.** We concur with Judge Fox's conclusion that Rules 3020(b) and 9014 (both of which are applicable on this § 1322(b) question) suggest two different allocations of the burdens. Judge Fox also considered "policy implications," noting the non-mandatory nature of the provision he was analyzing. Similarly, § 1322(b) is not a list of items that must be included; it is merely a list of items that *may* be included. It is the creditor's objection that puts the specific plan provision in front of the court. Thus, the creditor is the moving party seeking to change the state of affairs. *In re Fries*, 68 B.R. 676, 685 (Bankr.E.D. Pa.1986).

**3.** The court also rejected the idea that § 1322(b)(8) was intended to broaden eligibility beyond the "regular and stable" income requirements of § 101(24) and § 109(e). *In re Anderson*, 21 B.R. 443, 445.

**4.** To quote Judge Norton again:
> The prospects of an unemployed and poverty stricken individual prevailing in a reasonable period of time in such a lawsuit against such a colossal industrial enterprise seems not very substantial or encouraging.

*In re Anderson*, 21 B.R. 443, 445.

**5.** *Supra*, n. 1.

property and the uncertainty of the lawsuit. Debtor is left with the ultimate burden of persuasion, a burden it fails to carry. It is not, however, the balloon nature of the payment that persuades us that this plan is inadequate. Rather, it is the uncertainty of recovery, the same concern articulated in the *Anderson* opinion.

We must also determine whether this final payment would occur "within a reasonable time." 11 U.S.C. § 1322(b)(5). That phrase has been interpreted to mean within the maximum plan payment period. *In re Keays*, 36 B.R. 1018 (Bankr.E.D.Pa. 1983). Even assuming a favorable judgment within the plan payment period, there is no way to predict whether it will be adequate to fund the plan, whether it will be appealed, or whether any ultimate judgment will be paid promptly. The debtor has not persuaded us that the necessary recovery will occur within a "reasonable" period of time.

Hill is also the movant is this § 362 motion. The § 362 arguments are limited to § 362(d)(1), which provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by termination, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; ...

11 U.S.C. § 362(d)(1). The Code allocates the burden of proof, so that:

> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g). Since the parties concede that debtor has equity in the property, and since this is not a § 362(d)(2) argument, debtor bears the § 362(g) burden on this issue of adequate protection.

Our court, however, has repeatedly required that the moving party make an initial, prima facie case before any burden is placed on debtor. *See e.g., In re Morysville Body Works, Inc.*, 86 B.R. 51, 55

(Bankr.E.D.Pa.1988), and cases cited therein. Although we have not previously confronted a factually analogous case, we hold that on these facts, the stipulation that this is a contingent, unliquidated lawsuit fulfills Hill's initial burden.

The next question is whether debtor has met his § 362(g) burden. Debtor claims that the pending lawsuit adequately protects Hill's interests. We hold that such a speculative funding source is insufficient to provide adequate protection. Although § 361 lists several non-exclusive methods of providing "adequate protection," the term is not defined. Not surprisingly, this type of lawsuit is not one of the enumerated methods.

The legislative history and case law development suggest that adequate protection requires something more than reliance on a contingent, unliquidated lawsuit. It has been suggested that adequate protection is defined by the "concept involved rather than any particular method of adequate protection." Notes of the Committee on the Judiciary, H.R. No. 95–595, U.S. Code Cong. & Admin.News 1978, p. 5787. That concept has been examined in myriad opinions, the most famous of which was penned by Judge Learned Hand. *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir.1935). Interpreting § 77B of the Bankruptcy Act, Judge Hand suggested that there was no reason to deprive a secured creditor of its money or property in the interest of the junior lienholder, "unless by a substitute of the most indubitable equivalence." We can find no equivalence of any sort between Hill's unfulfilled property rights and the pending lawsuit. The lawsuit is an economic intangible; neither recovery nor the amount of recovery can be ascertained. Drawing a parallel, we note that in a civil action, unliquidated tort claims are not subject to garnishment. An attaching creditor can gain no greater right than was vested in the debtor. *See generally, London Grove Contractors, Inc. v. J. Robert Pierson, Inc. (In re J. Robert Pierson, Inc.)*, 44 B.R. 556, 559 (E.D.Pa.1984).

This court's concept of adequate protection involves a careful balance of all relevant factors: the value of the collateral, the likelihood that it will depreciate over time, prospects for a successful reorganization or debtor's performance in accordance with the plan. *In re Tashjian* 72 B.R. 968, 973 (Bankr.E.D.Pa.1987). *See also In re Gulph Woods Corp.*, 84 B.R. 961, 972–73 (Bankr.E.D.Pa.1988); *In re Morysville Body Works, Inc.*, at 57–58.

One of the relevant factors that courts may consider is the existence or non-existence of a feasible plan of reorganization. *In re Crompton*, 73 B.R. 800, 802 (Bankr.E.D.Pa.1987) ("the conclusion that the debtor's plan is basically sound is the linchpin of our analysis as to whether the mortgagee is entitled to relief from the automatic stay ..."). In the instant case, we have already held that the plan as currently formulated is inadequate. Under the facts of the case, we can see no chance for successful amendment. This tells us that Hill will not be adequately protected by that plan.

Even the existence of tangible equity will not necessarily save an offer of an otherwise speculative form of adequate protection. Again, *Anderson* provides the most analogous facts. That court held that the existence of substantial equity in the residence would not, taken alone, constitute adequate protection. *In re Anderson* 21 B.R. 443. *See generally, Fed'l Nat'l Mortgage Assn. v. Pelzer*, 15 B.R. 73, 5 C.B.C.2d 579 (Bankr.E.D.Pa.1981) (relief may be granted even though debtor has equity in the property). The *Anderson* court suggests that something more—perhaps a proposal for early liquidation—is necessary to create adequate protection. *In re Anderson*, 21 B.R. 443, 446.

We can, of course, envision a situation in which substantial equity coupled with the offer of a contingent balloon payment might create adequate protection. Such a scenario would probably involve property that was appreciating and a relatively small "balloon" payment. The facts of the instant case, however, are not sufficiently well developed to allow us to make that type of in-depth analysis.

Finally, we note that as a court of equity we may be asked to consider what is variously denominated as the "balance of the hurt," the "balance of the equities," or the "respective equities" linking the parties. *See generally, In re Ziets*, 79 B.R. 222, 226–27 (Bankr.E.D.Pa.1987); *In re Cherry*, 78 B.R. 65, 72–74 (Bankr.E.D.Pa.1987); *In re Perlstein Ent., Inc.*, 70 B.R. 1005, 1010 (Bankr.E.D.Pa.1987); *In re Stranahan Gear Co.*, 67 B.R. 834–37 (Bankr.E.D.Pa. 1986). Although this case is probably laden with such equitable arguments, many of which could flow from debtor's status as a disabled worker, the relevant facts and arguments have not been presented.

We have no choice but to grant Hill's motion for relief from the automatic stay.