**In re Thomas W. OLICK and Kathryn A. Olick, Debtors.**

**Bankruptcy No. 96–22123T.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Reading Division.

May 29, 1998.

148

Thomas A. Capehart, Piosa, Hixson, Giordano & Reilly, Allentown, PA, for National Penn Bank.

William C. House, New York City, for Debtors.

Frederick L. Reigle, Reigle & Gellert, Reading, PA, Trustee.

### *MEMORANDUM*

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Two related matters are at issue in this contested matter: *(1)* a motion for relief from the automatic stay filed by National Penn Bank ("NPB") and *(2)* the Debtors' objections to NPB's proofs of claim. For the reasons explained hereafter, the Debtors' objections will be granted in part and NPB's motion will be denied without prejudice.

## BACKGROUND

This chapter 13 case was filed *pro se* on July 11, 1996 and represents the Debtors' second attempt to reorganize under Chapter 13. The Debtors' first case was unsuccessful and ended in dismissal. The Debtors' financial difficulties have their origin in Mr. Olick's failed business enterprise and the resulting complex circumstances set this case apart from the average Chapter 13 case. The Debtors have objected to substantially all of the proofs of claims filed by creditors who are owed debts arising from Mr. Olick's prior business. Litigation in this case has mushroomed and after a year and a half, the Debtors have yet to confirm a plan. In large part, the unusual timeline of this case stems from the Debtors' lack of counsel; however, the Debtors' recent retention of counsel is now propelling the case to a conclusion and has certainly resulted in cogent advocacy in the present matters.

As stated previously, before us are the Debtors' objections to NPB's proofs of claim and NPB's motion for relief from the automatic stay. The parties have submitted the matters for decision on the basis of a stipulated record. The stipulation and briefs were timely filed and the matters are now ripe for adjudication. ·

A review of the stipulation together with the 18 documentary exhibits appended thereto reveals the following: Mr. Olick is the record owner of a property at 1220–1222 Chidsey Street, Easton, Pennsylvania (referred to as the "Commercial Property"). The property has a restaurant on the first floor and an apartment on the second floor. On May 26, 1990, Mr. Olick borrowed $70,000 from the National Bank of Boyertown (now NPB) evidenced by a promissory note of the same date. This loan was secured by a first mortgage on the Commercial Property and by an assignment of leases and rents from same. The loan was to be repaid in monthly installments, the amount of which was based on a 15 year amortization schedule, but the loan was only to be in effect for a period of five years, after which all sums owed would become due and payable. The interest rate was fixed at 12% per annum.

Not long after the loan was originated, Mr. Olick encountered financial problems which adversely affected his ability to repay the loan and caused him to fall into default. On January 24, 1992, NPB confessed judgment against Mr. Olick based on the note for $79,-126.70. Pursuant to the note, the judgment included a 15% fee in the amount of $10,-320.87 to compensate for collection costs. By June of 1992, NPB had successfully exercised the assignment of rents provision and began receiving rents from Mr. Olick's tenant. The tenant occupied the first and second floors of the Commercial Property and paid $1,000 per month. Since the judgment was filed, NPB has received a significant sum on account of the loan totaling $42,560.46 paid by or on behalf of Mr. Olick. No payment has been made or received, however, since July 13, 1995.

On August 31, 1997, NPB filed an amended proof of claim in the Debtors' bankruptcy case on account of the debt arising from the commercial loan. This claim is designated as secured and asserts a total liability of $54,-471.49, with $49,645 allegedly owed in principal and $5,096.49 allegedly owed in interest through July 28, 1997. From the date of the confessed judgment, interest was calculated at the judgment rate of 6%. The principal balance also included the 15% collection fee. Exclusive of attorneys fees and any and all other setoffs the Debtors allege to be due, the parties agree that NPB is owed $41,-988.24 as of November 13, 1997, with interest calculated at 6%.

On November 13, 1990, the Debtors entered into another loan agreement with NPB for a loan in the original principal amount of $39,390.57. This loan is evidenced by a promissory note of the same date and is secured by a second mortgage on residential real property owned by the Debtors at 4014 Crestview Avenue, Easton, Pennsylvania (hereinafter referred to as the "Residential Property"). Interest on the loan was set at 12% per annum. The parties agree that this property has a fair market value of $134,000 and is encumbered by a first lien in the amount of $71,387.46.

The Debtors' financial difficulties also affected their ability to remain current on the

loan secured by the Residential Property. As a result of the Debtors' default on the residential mortgage, NPB confessed judgment on the residential note on January 24, 1992 in the amount of $40,973.57, which included a flat 15% collection fee, as provided in the loan documents, in the amount of $5,344.38. The judgment provided for interest to accrue at the rate of 6%. Since entry of the judgment, payments totaling $31,164.26 have made to NPB on account of this debt. However, no payments have been made since March 22, 1996.

On August 21, 1997, NPB filed a second amended proof of claim for $31,696.50 on account of its secured interest in the Residential Property. This amount included the 15% collection fee and interest calculated at 12%.

Based on the increasing accumulation of interest on its claims and the fact that Debtors have yet to confirm a plan, NPB asserts that it is entitled to relief from the automatic stay. The Debtors respond by pointing out that even if NPB's claims were allowed as filed, there is still a sufficient equity cushion in place on both of the properties to adequately protect NPB's interests. In this respect, the Debtors point out that, after subtracting the amount of NPB's claims and all other liens on the properties, approximately $29,000 of equity remains in the Commercial Property and approximately $31,000 of equity remains in the Residential Property. The Debtors also contend that NPB should be denied relief from the stay because it has no present right to foreclose on the mortgages under Pennsylvania Act of 1974, No. 6, 41 P.S. § 407 ("Act 6"), which prohibits executing against residential property based on a confessed judgment. The Debtors' principal arguments, however, are directed against the amount and breakdown of NPB's proofs of claim. The Debtors dispute the applicable interest rate, NPB's right to attorney's fees as well as other costs and expenses and request that various credits be applied against NPB on account of monies it failed to collect from the tenant in the Commercial Property and expenses it failed to pay on the Commercial Property during the period when NPB was collecting rents.

## DISCUSSION

This opinion will first address the Debtors' objections to NPB's proofs of claim and then NPB's motion for relief from the automatic stay. We will begin our discussion with an analysis of the Debtors' objections to NPB's proof of claim pertaining to the Residential Property.

### I(a).

 The first dispute involving this claim concerns the applicable interest rate. Under the contract, interest was set at 12% and the contract also provided that after entry of a judgment "[i]nterest shall continue to accrue ... at the higher of the prevailing rate of interest under this Note, or the judgment rate of interest under applicable law." Exhibit K, ¶ 14. Thus, this clause allowed post-judgment interest to continue at the 12% rate established in the Note. Nevertheless, when NPB confessed judgment on the Note, it requested and received a judgment providing for interest at 6% rather than 12%. According to NPB, the judgment was taken at the 6% rate as a result of a clerical error and it was always its intent to seek 12% interest as provided in the contract. Thus, in its proof of claim, NPB calculated the indebtedness using the 12% rate from the note rather than the 6% rate provided in the judgment. Without citing any authority for the proposition, NPB asserts that it was proper to use the higher interest rate in its claim because it would have had the right to amend the judgment to reflect the higher rate but for the imposition of the automatic stay resulting from the Debtors' present and prior bankruptcy cases.

The Debtors respond by contending that under the doctrine of merger, the note merged into the judgment and no longer sets the terms and conditions of the obligation. The Debtors assert that following the merger of the note into the judgment, the judgment stands as the single source of the obligation and all of the terms and conditions associated with the obligation are established by the judgment including the interest rate. The Debtors further state that, "[h]aving received over $31,000 in payments applied to the Residential Loan Judgment (Fact at ¶ 32), it is

too late in the day for [NPB] now to come before this Court and, in effect, ask the Court to reform the judgment that it obtained by confession." Debtors' Reply to Response of National Penn Bank to Objection to its Proofs of Claim at 7.

Under normal circumstances, the Debtors' argument would be quite persuasive if not conclusive. However, this is not the case under the present circumstances. Our review of the law reveals that both parties have overlooked the one truly controlling legal element with respect to this issue—that the doctrine of merger is inapplicable to a confessed judgment on residential real property pursuant to section 407 of Act 6.[1] This section, the implications of which are pivotal to several of the issues in this case, provides:

### § 407. Confession of judgment

(a) As to any residential real property, a plaintiff shall not have the right to levy, execute or garnish on the basis of any judgment or decree on confession, whether by amicable action or otherwise, or on a note, bond or other instrument in writing confessing judgment until plaintiff, utilizing such procedures as may be provided in the Pennsylvania Rules of Civil Procedure, files an appropriate action and proceeds to judgment or decree against defendant as in any original action. The judgment by confession shall be changed as may be appropriate by a judgment, order or decree entered by the court in the action. After the above mentioned original action has been prosecuted and a judgment obtained, that judgment shall merge with the confessed judgment and the confessed judgment shall be conformed as to amount and execution shall be had on the confessed judgment. *The parties to the action shall have the same rights as parties to other original proceedings.* Nothing in this act shall prohibit a residential mortgage lender from proceeding by action in mortgage foreclosure in lieu of judgment

by confession if the residential mortgage lender so desires.

41 P.S. 407 (emphasis added).

While not eliminating confessed judgments, section 407 essentially renders them a nullity in all instances in which the section applies. Under section 407, a creditor may not execute on a confessed judgment until the creditor has filed a separate civil action as an original proceeding in which the debtor and the creditor enjoy all of the rights they would have in any other original proceeding. In *RCK, Inc. v. Katz,* 331 Pa.Super. 163, 168–69, 480 A.2d 295, 297–98 (1984), the Pennsylvania Superior Court construed the section as follows:

The statutory wording clearly shows that a Section 407(a) action is a *de novo* proceeding wherein the parties are not restricted to claims or defenses raised in conjunction with a creditor's earlier acquisition of a confessed judgment or a debtors' petition to open same. Otherwise construing the phrase "original action" would ignore the plain meaning of the words and defeat Section 407(a)'s legislative purpose of assuring debtors an opportunity to assert any and all potential claims and defenses which might preclude undue loss of their residential real property.

*Id.* A confessed judgment against residential property, then, is not a final judgment in the usual sense because under section 407 its enforceability will be determined by the results of a subsequent proceeding in which the parties are free to litigate the matter anew, raising all possible claims and defenses.

 Accordingly, the doctrine of merger cannot apply to a confessed judgment because, due to section 407 of Act 6, a confessed judgment is not a final judgment. Merger is a rule of *res judicata* which holds that all of a plaintiff's claims are merged into a plaintiff's judgment at the end of a legal proceeding thereby preventing the plaintiff from ever again being able to bring an action based on the same claims.[2] *In re Estate of*

---

1. The parties do not appear to dispute that Act 6 applies to this loan, but in any event, it is clear that the loan is within the Act's parameters. Act 6 applies to mortgage loans in an initial principal amount of $50,000 or less, covering "residential real property" and made by a "residential mortgage lender" to "residential mortgage debtors."

41 P.S. §§ 101 & 406. The loan at issue fits within those terms as defined in the Act.

2. This analysis is based on Pennsylvania law which, according to the full faith and credit statute, must govern the degree of finality ac-

*R. L. L.*, 487 Pa. 223, 228, 409 A.2d 321, 323 & n. 9 (1979) (*res judicata* applies only to final judgments); *Bearoff v. Bearoff Brothers, Inc.*, 458 Pa. 494, 499, 327 A.2d 72, 75 (1974); *Mitchell v. Randall*, 368 Pa.Super. 421, 424–25, 534 A.2d 508, 509 (1987); Restatement (Second) Judgments §§ 13, 17 & 18 (1982). In a contract action, the contract itself is held to merge with the judgment, thereby depriving a plaintiff from ever again being able to assert claims based on the terms and provisions of the contractual instrument. *In re Stendardo*, 991 F.2d 1089, 1095 (3d Cir.1993); *In re Herbert*, 86 B.R. 433, 436 (Bankr.E.D.Pa.1988); *Commissioners of Sinking Fund v. City of Philadelphia*, 324 Pa. 129, 132, 188 A. 314, 316 (1936). Accordingly, in this instance, where section 407 prevents the judgment from becoming final, it follows that merger cannot apply. In a *de novo* original action under section 407, NPB is free to bring its claim against the Debtors based on the 12% interest rate contained in the Note and therefore, NPB must also be at liberty to do the same in this court. None of the cases cited by the Debtors leads to a contrary result. Indeed, all of the cases cited by the Debtors are distinguishable because each one concerns a default foreclosure judgment rather than a confessed judgment. *Stendardo*, 991 F.2d at 1089; *In re Presque Isle Apartments, L.P.*, 112 B.R. 744, 746 (Bankr.W.D.Pa.1990); *Herbert*, 86 B.R. at 435; *In re Schlecht*, 36 B.R. 236, 237 (Bankr.D.Alaska 1983). Moreover, the application of section 407 of Act 6 was never an issue in any of the cases cited by the Debtors and the *Schlecht* case, which the Debtors reference on several occasions, is particularly weak authority because it is not based on Pennsylvania law. In conclusion, due to section 407, we reject the Debtors' argument that the note merged into the judgment thereby requiring that NPB receive interest on its claim for the Residential Mortgage at the statutory rate of 6%. Rather, we find that NPB may receive interest on this claim at the contract rate of 12%.

corded a judgment from a Pennsylvania Court. 28 U.S.C. § 1738.

(b).

▪ The Debtors next object to NPB receiving a 15% collection fee for taking a confessed judgment. As an initial matter, it should be observed that if the merger doctrine applied to NPB's judgment, this objection would have to be summarily denied. In that event, we would be constrained to accept the judgment as a final determination of NPB's claim and we would not be permitted to look behind the judgment to invalidate the various fees and costs assessed therein. *Werts v. Federal National Mortgage Association*, 48 B.R. 980 (E.D.Pa.1985) (attorney's fees contained in final foreclosure judgment cannot be reduced on account of faulty Act 6 notice); *In re Blakeney*, 126 B.R. 449, 456 (Bankr.E.D.Pa.1991) (foreclosure judgment is starting point from which all calculations to establish claim must be made); *In re Rorie*, 98 B.R. 215, 218 (Bankr.E.D.Pa.1989) (same); *see also Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). However, in this case, because the confessed judgment is not final, we may address the merits of the Debtors' objection.

▪ The Debtors' objection to the receipt of a 15% flat fee for legal services has merit and will be granted. The allowance of attorney's fees in a proof of claim is governed by section 506 of the Bankruptcy Code, which in pertinent part provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). Courts applying this section have isolated four requirements that must be met for fees and costs to be allowed as part of a claim, as follows: the fees must be: "*(1)* allowable under the terms of section 506(b);[3] *(2)* provided for in the parties'

---

**3.** Because section 506(b) also states that the fee must be provided for in the parties' agreement and be reasonable, we understand this reference

agreement; *(3)* reasonable; and *(4)* allowable under state law." *In re Smith,* 76 B.R. 426, 429 (Bankr.E.D.Pa.1987); *accord In re West Chestnut Realty,* 186 B.R. 612, 617 (Bankr. E.D.Pa.1995); *In re Nickleberry,* 76 B.R. 413, 423 (Bankr.E.D.Pa.1987).

Applied in this case, it is evident that NPB's claim runs afoul of the third and fourth prongs. The first two prongs are satisfied in that, one, NPB is oversecured, thus making a claim for attorney's fees permissible under section 506(b), and, two, the mortgage and note provide for the payment of attorney's fees by the Debtors to NPB in the event of default. It is not necessarily clear, however, that the fee requested is either reasonable or allowable under state law.

Addressing the state law issue first, the applicable state law in this instance is contained in Act 6, 41 P.S. § 406,[4] which contains specific provisions for the allowance of attorney's fees, as follows:

**406. Attorney's fees payable**

With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:

. . .

*(2)* Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

*(3)* Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

41 Pa. S. § 406. Although NPB did not bring a foreclosure action, it did confess judgment against the Debtors. Accepting that a confessed judgment fits within the

definition of an "other legal action," an issue which is not controverted, NPB may only collect fees that are reasonable and actually incurred. Under this standard, the 15% flat rate fee sought by NPB is not allowable. As a flat rate fee, it does not correspond to the actual amount of labor necessary to seek a legal remedy and therefore it does not represent a fee that was "actually incurred." Moreover, because there was little, if any, benefit in light of section 407 to NPB obtaining the confessed judgment, it would be unreasonable to award a 15% fee to NPB for obtaining the confessed judgment. Therefore, we will not allow NPB a flat rate fee in this matter, but instead, will measure NPB's attorney's fees by the lodestar method, which is the accepted means for determining attorney's fees in the Third Circuit. *In re Meade Land and Development Co., Inc.,* 527 F.2d 280, 283–84 (3d Cir.1975); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 166–68 (3d Cir.1973); *Smith,* 76 B.R. at 431; *Nickleberry,* 76 B.R. at 422.

■ The Debtors next argue that NPB waived its right to receive attorney's fees. This argument stems from two events that occurred during or about the year 1992. The first event was that NPB reimbursed itself $1,520 for legal fees out of fire insurance proceeds that had become payable as a result of a fire in the Commercial Property. The second event was that NPB allegedly entered into or offered to enter into some type of workout agreement that would only require the Debtors to compensate NPB for actual legal fees rather than the 15% flat rate amount. The Debtors argue that based on these events, NPB made an election to accept actual fees over the flat rate fee and reimbursed itself for the full amount of those fees out of the insurance money.

We find this argument unpersuasive. To explain, the fact that NPB engaged in these actions does not indicate that it waived its right to collect additional attorney's fees that

---

to section 506(b) to address the issue of whether the claim is oversecured.

**4.** As stated previously in note 1, *infra,* it does not appear that the parties dispute that Act 6 applies

to the residential loan, but in any event and explained in more detail in note 1, *infra,* it is clear that the loan is within the Act's parameters.

may become due in the future arising out of a different dispute. That NPB may have been willing to accept a lesser, compromised sum in settlement of one dispute is irrelevant to what NPB may be entitled to receive as fees arising from a different dispute. The Debtors, moreover, did not even participate in the settlement of the insurance funds. This matter was handled between NPB and the contractor to whom the money was due with no input by the Debtors. Finally, it should be noted that the waiver issue is not significant in view of the billing records submitted by NPB since these billing records cover a period from 1994 to 1997. This indicates that NPB is seeking to collect fees incurred subsequent to the confessed judgment and the settlement on the insurance proceeds. Since the collection of the fees in issue could not be waived on the basis of events that transpired before the fees were incurred, we find the Debtors' waiver argument to be without merit.

### (c).

The realization that NPB is seeking legal fees for events subsequent to the confessed judgment provides a natural transition to the related issue of whether it is entitled to post-judgment and post-petition attorney's fees over the Debtors' objection thereto. With regard to post-judgment fees, the Debtors' argument is premised on the doctrine of merger, insisting that since the terms of the note which provide for the collection of attorney's fees merged with the confessed judgment, there are no longer grounds for the collection of such fees. *See Stendardo,* 991 F.2d at 1089. The Debtors' argument is easily disposed of, however, in view of our previous conclusion that the note never merged into the confessed judgment. NPB is entitled to seek reimbursement for legal fees post-judgment pursuant to the terms of the note and Act 6.

■ Nevertheless, under the facts of this case, that does not mean that NPB is entitled to all of the post-judgment fees it is seeking. A review of the attorney time records reveals that a significant portion of the post-judgment fees were incurred litigating matters in the Debtors' prior bankruptcy case. Pursuant to Judge Fox's decision in *Smith,* 76 B.R.

at 426, Act 6 does not permit the collection of attorney's fees for litigation in bankruptcy court. Act 6 permits collection of attorneys fees, "[u]pon commencement of foreclosure or *other legal action* with respect to a residential mortgage." 41 Pa.S. § 406(2) (emphasis added). Based on, among other things, an historical analysis of Act 6, Judge Fox concluded in *Smith* that bankruptcy litigation was not encompassed within the term "other legal action" as used in Act 6. This conclusion was based on the fact that Act 6 was drafted prior to the enactment in 1978 of the Bankruptcy Code, during a time when bankruptcy was rarely used to fight residential mortgage foreclosures. Judge Fox's reasoning is persuasive and we agree that Act 6 prevents the collection of attorney's fees in bankruptcy court litigation. Accordingly, with respect to the Residential Property, we hold that NPB may not collect attorney's fees for services performed in relation to the Debtors' current or prior bankruptcy proceeding. NPB may, however, include in its claim legal fees for litigation in the state court during the relevant period.

### (d).

In sum, we find the following with respect to NPB's proof of claim on the Residential Property: *(1)* neither the note nor the mortgage merged into the confessed judgment because the judgment was not final, and, therefore, the contract interest rate of 12% is applicable to the claim; *(2)* NPB may not collect a 15% flat fee for legal services but is entitled to claim pre-judgment and post-judgment fees and costs, based on the lodestar method, to the extent available under the contract and applicable state law; and *(3)* legal fees incurred for pursuing collection activities against the Debtors in the bankruptcy court are not allowable because the collection of such fees is contrary to Act 6.

### II(a).

We will now address the Debtors' objections to NPB's proof of claim pertaining to the Commercial Property. The thrust of the Debtors' objection to this claim is that they are entitled to $30,000 of credits and offsets based on NPB's failure to collect the rents and otherwise manage the property pursuant

to its alleged responsibility under the assignment of rents. This $30,000 figure consists of almost $15,000 in uncollected rents, over $4,000 in water and sewer charges assessed against the property and payable as rent under the lease, $6,500 of unpaid real estate taxes that are payable as rent under the lease and an unpaid charge of $4,500 on account of property damage that was also payable as rent under the lease. The Debtors assert that these amounts should have been collected by NPB under the assignment of rents and that NPB must therefore be held responsible for these sums by having the amounts recouped against its proof of claim. In support of their argument, the Debtors cite several provisions from the assignment of rents that purport to give NPB broad powers to collect all sums due under the lease. These provisions include paragraph 3 of the assignment which provides:

Assignor hereby irrevocably designates and appoints Assignee as its true and lawful attorney-in-fact in its name, place and stead to ask, demand, collect, sue for attach, levy, recover and receive all sums of money which are hereby assigned and which now or hereafter may become due, owing and payable for or on account of any and rents, issues, profits or other income accruing, payable or receivable under the Leases and from the Leased Premises, from the present lessees or from any future lessees, tenants, subtenants or occupants thereof, with full power to institute any and all legal proceedings for the collection of rents or for the taking of possession of the Leased Premises or any part thereof, including summary proceedings.

Exhibit "C" ¶ 3. The Debtors also cite paragraph 6 of the assignment which provides:

If an event of default shall occur under and as provided in the Note ... Assignee may declare all sums secured hereby immediately due and payable and may at its option ... enter upon or take possession, manage and operate the Leased Premises or any part thereof; make, cancel, enforce or modify the Leases; obtain and evict tenants and fix or modify rent or do any acts which assignee deems property to protect the security hereof, and, ... in its own name to sue for or otherwise collect or receive the rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection including reasonable attorney's fees, upon any indebtedness secured hereby and in such order as Assignee may determine. . . .

Exhibit "C" ¶ 6.

Taken in isolation, these paragraphs lend support to the Debtors' argument by demonstrating that NPB held the power with respect to the Commercial Property to personally enforce payment of the rent by any legal means. Nevertheless, a review of the assignment in its entirety reveals that NPB was under no legal obligation to engage in any collection activities against a defaulting tenant and could, if it so chose, leave the responsibility entirely with the Debtors. For instance, in describing the scope of the assignment the document states, "[a]ssignor has assigned, transferred and set over unto Assignee, all of Assignor's rights (*but none of its duties or obligations*), title and interest in and to the Leases." Exhibit "C" at 1 (emphasis added). In a similar vein, paragraph 5 states:

5. Assignor agrees as follows:

(a) Faithfully to abide by, perform and discharge each and every obligation, covenant and agreement of the Leases by the Lessor therein to be performed; at the sole cost and expense of Assignor, to enforce or secure the performance of each and every obligation, covenant, condition and agreement contained in the Leases by the lessees therein to be performed ...

(b) At Assignor's sole cost and expense, to appear in and defend any action or proceeding arising under, growing out of or in any manner connected with the Leases or obligations, duties or liabilities of the Assignor and the lessees thereunder . . . .

Exhibit "C" ¶ 5(a) & (b). Paragraph 7 states:

7. Assignee shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases or under or by reason of this Assignment. . . .

Exhibit "C" ¶ 7. Finally, it should be observed that not even paragraph 6, which is relied upon by the Debtors, fully supports their case. While this paragraph gives NPB the right to take possession of the property and sue to collect rent, etc., it is phrased permissibly. The paragraph states that NPB "may" act, not that NPB is required to act.

Contracts must be construed as a whole in an attempt to give meaning to all of the words used and to carry forward the intent of the contracting parties. *Wrenfield Homeowners Association, Inc. v. DeYoung*, 410 Pa.Super. 621, 627, 600 A.2d 960, 963 (1991). Reading the assignment of rents as a whole leads to the conclusion that it imposes no obligation upon NPB to take any collection action against the tenant. The assignment gives NPB the right and option, if it elects, to pursue and collect unpaid rent but it does not require NPB to do so.

The Debtors' argument on this issue relies solely upon the terms of the assignment, they cite no case law to support their position. Our research reveals that the cases most supportive of the Debtors' theory concern the duties of mortgagees-in-possession. Mortgagees-in-possession are held to be *quasi* trustees, with a duty to collect and account for rents. In *Myers–Macomber Engineers v. M.L.W. Construction Corporation*, 271 Pa.Super. 484, 414 A.2d 357 (1979), the Pennsylvania Superior Court described the duties of a mortgagee-in-possession as follows:

> When a mortgagee goes into possession, he does not become the owner of the real estate. . . . Rather, he becomes a *quasi* trustee, managing the property for the benefit of the mortgagor, but at the same time protecting his own interest. *Zisman v. City of Duquesne*, 143 Pa.Super. 263, 18 A.2d 95 (1941); *In re Appeal of McNicholas*, 137 Pa.Super. 415, 9 A.2d 200 (1939). As a mortgagee in possession, his duty is to comport with the same standard of conduct as a prudent owner, *i.e.*, he must manage the property in a reasonably prudent and careful manner so as to keep it in a good state of preservation and productivity. *Landau v. Western Pennsylvania National Bank*, 445 Pa. 217, 282 A.2d 335

(1971); *Integrity Trust Co. v. St. Rita Building & Loan Asso.*, 317 Pa. 518, 177 A. 5 (1935). *See also:* Osborne, Mortgages s 168 (2d ed., 1970). *The mortgagee in possession has a duty to collect the rents and profits which accrue during his occupancy and apply them to the mortgage debt. Provident Trust Co. of Philadelphia v. Judicial Building & Loan Asso., supra.* Moreover, the mortgagor is entitled to an accounting from his mortgagee who has taken possession. *Landau v. Western Pennsylvania National Bank, supra; Winthrop v. Arthur W. Binns, Inc.*, 160 Pa.Super. 214, 50 A.2d 718 (1947).

*Myers–Macomber Engineers*, 271 Pa.Super. at 489, 414 A.2d at 360 (emphasis added); *accord In re Union Meeting Partners*, 165 B.R. 553, 563 (Bankr.E.D.Pa.1994); *Winthrop v. Arthur W. Binns, Inc.*, 160 Pa.Super. 214, 216–17, 50 A.2d 718, 719 (1947).

■ Under the standard set forth in the above quoted paragraph, a mortgagee-in-possession takes on a fiduciary duty that could very well render it liable for rents it neglected to collect. In the present case, however, the Debtors have not met their burden of showing that NPB should be held to this high standard since they failed to establish that NPB was a mortgagee-in-possession. To explain, a creditor becomes a mortgagee-in-possession when it takes actual possession and control over a debtor's property. *Zisman v. City of Duquesne*, 143 Pa.Super. 263, 265–66, 18 A.2d 95, 97 (1941); *see also Myers–Macomber Engineers*, 271 Pa.Super. at 488, 414 A.2d at 359. In the present case, however, the record is devoid of evidence that NPB took actual possession of the Commercial Property. NPB exercised its rights under the assignment of rents by sending the tenant a letter demanding the payment thereof, and, upon the tenant's noncompliance, NPB garnished the rent. By sending the demand letter to the tenant, NPB was deemed to have taken constructive possession of the property, *In re SeSide Co.*, 152 B.R. 878, 884 (E.D.Pa.1993); *In re D'Anna*, 177 B.R. 819, 825 (Bankr.E.D.Pa.1995), thus permitting NPB to collect the rents, but the applicable case law appears to require a creditor to take actual possession to achieve

the status of mortgagee-in-possession. *Zisman,* 143 Pa.Super. at 265–66, 18 A.2d at 97.

Moreover, even if NPB's actions were deemed sufficient to render it a mortgagee-in-possession, the terms of the assignment would still govern the parties' rights and responsibilities. The sparse law on this issue holds that the terms of a creditor's contract governs its responsibility as a mortgagee-in-possession. Stated differently, a debtor and a creditor, through their contract, have the ability to expand, lessen or eliminate the duties and obligations associated with being a mortgagee-in-possession. *In re Union Meeting Partners,* 165 B.R. 553, 564–65 (Bankr.E.D.Pa.1994); *see* 59 C.J.S. Mortgages § 295(b) (1998) ("[t]he rights and duties of a mortgagee in possession, *in the absence of contractual provisions,* are fixed by law") (emphasis added).

The Pennsylvania Supreme Court ruled on this issue in *Hostetter v. Giffen,* 268 Pa. 530, 112 A. 150 (1920). In this case, the owners of a commercial property appointed the party holding a second mortgage to operate the property as mortgagee-in-possession. The contract appointing the mortgagee to possession contained a specific scheme governing the distribution of the rental proceeds. When the rents received were not enough to cover expenses, the mortgagee veered from the contract and began paying himself funds that, under the contract, should have been paid to others. The Pennsylvania Supreme Court held that the mortgagee's rights as a mortgagee-in-possession were governed by the contract which he was obligated to follow:

What appellant urges as the power of a mortgagee in possession to apply the income on his encumbrance may be sound in case[s] where there is no agreement to the contrary; but here the rights of the parties grow out of their contract. The fund in question was received by the ... appellant, as agent and for a special purpose; hence he cannot set off against it the principal's general indebtedness to him ....

As the contract obligates Sloan to expend, for certain defined purposes, all of the fund in excess of the net rent, he cannot set off his individual claim against any part of such excess fund; in other words, he is deprived of the right of set-off by his own contract.

*Hostetter,* 268 Pa. at 534, 112 A. at 151. In light of the *Hostetter* decision, we conclude that even if NPB was a mortgagee-in-possession with respect to the Commercial Property, its obligations as such were governed by the assignment of rents. In this instance, irrespective of what the law might otherwise require of a mortgagee-in-possession, the assignment of rents agreement controls and did not mandate that NPB pursue the collection of rents that went unpaid. Rather, the obligation for doing so remained in the hands of the Debtors. Therefore, for all of the reasons stated above, we will deny the Debtors' objection and no surcharge will be imposed against NPB's claim for the Commercial Property debt to compensate for rents that went uncollected.

(b)(i).

The next component of the Debtors' argument concerns the inclusion of the 15% collection fee in the claim for the Commercial Property debt. Prior to addressing the merits of this argument, we must clarify the applicability of Act 6 to the Commercial Property mortgage. Act 6 is generally inapplicable to the Commercial Property mortgage because the obligation was in an initial principal amount in excess of $50,000. *See* 41 Pa. S. § 101. For this reason, the debt does not fall within Act 6's definition of a residential mortgage, *id.,* and section 406 is not applicable to govern the issuance of attorney's fees.

The Debtors, however, astutely point out that section 407 of Act 6, the confessed judgment section, is more broadly drafted than the other provisions of the statute. By its terms section 407 is applicable to "any residential real property," 41 Pa. S. § 407(a), which the statute defines broadly to include "property ... containing not more than two residential units or on which not more than two residential units are to be constructed ...." *Id.* § 101. Although the Commercial Property includes a restaurant on the first floor, it has an apartment, a residential unit, on the second floor. The existence of the apartment brings the Commercial Property

within the literal terms of section 407. The presence of the restaurant or the fact that the property was owned by the Debtors for investment purposes does not remove the mortgage from the reach of section 407. Unlike other parts of Act 6, section 407 was drafted without the use of various defined terms that generally punctuate Act 6's language and function to limit its scope. Section 407 refers to the actors as "plaintiff" and "defendant" rather than "residential mortgage lender" and "residential mortgage debtor." The key term, "residential mortgage," which the Act uses to reference obligations in an initial principal amount of less than $50,000, is not used in the section at all.

Recognizing these same linguistic traits in the statute, the court in *First National Bank v. Koneski*, 392 Pa.Super. 533, 573 A.2d 591 (1990), concluded that section 407 was not limited to residential mortgages, but applied to any mortgage affecting residential real property:

It is significant to note that § 407(a) is not limited to confession of judgment proceedings involving residential real property which is encumbered by a residential mortgage. Instead, § 407(a) describes the procedure to be utilized in confessing judgment against "any residential real property. [Emphasis added.]" *See Drum v. Leta*, 354 Pa.Super. 448, 452, 512 A.2d 36, 37 (1986) and *In re Jackson*, [92 B.R. 987, 997 (Bankr.E.D.Pa.1988)]. Moreover, subsection (a) refers to "plaintiffs" and does not define this term as relating solely to residential mortgage lenders. Similarly, § 407(b) is not restricted to residential mortgage debtors, but applies to "any debtor". In view of the amendments to the statute and the terms used by the legislature, we hold that § 407 is not exclusively limited to actions involving confession of judgment against a residential mortgage, but applies to *all confession of judgment proceedings where residential, real property is concerned.*

*Koneski*, 392 Pa.Super. at 538, 573 A.2d at 593–94 (emphasis added); *see also In re Jackson*, 92 B.R. 987, 997 (Bankr.E.D.Pa. 1988) (stating that a farm which included a residence would come under section 407).

The amendment referred to by the *Koneski* court replaced the term "residential mortgages" with the broader phrase "residential real property." *Koneski*, 392 Pa.Super. at 538 n. 4, 573 A.2d at 593–94 n. 4. Thus, for the reasons heretofore stated, the *Koneski* court held that section 407 applied to a loan in excess of $50,000. The loan was, of course, secured by real property on which a residence was to be constructed. The residence, however, was to be built by a construction company owned by the debtors, thus suggesting that the loan was for commercial purposes to finance the construction of a house to be held out for sale to a consumer, rather than for use as a personal residence for the debtors.

Reference to Pennsylvania's Statutory Construction Act, 1 Pa. S. § 1501 *et seq.*, also militates in favor of applying section 407 to the Commercial Property loan. That Act specifically states that the plain meaning of statutory language may never be disregarded in an effort to fulfill a purpose or policy that may be perceived as underlying a statute. 1 Pa. S. § 1921(b). In this instance, then, the Statutory Construction Act does not allow us to read into the definition of "residential real property" terms that are not there, such as a requirement that the property be used as a residence for the Debtors or not have an additional nonresidential or commercial purpose. Actually, an analysis of the statutory language does not necessarily point to the propriety of implying any such limitations. The fact that the statute defines "residential real property" to include a single property containing up to two residences rather than just one residence would seem invariably to include property held for investment or income generating purposes. It is not reasonable, for instance, to expect a single property owner to simultaneously occupy two separate residences on the same land. One of the residences would reasonably be anticipated to be leased to another. It is also reasonable to conclude that the Pennsylvania legislature drafted section 407 to provide protection from confessed judgments to the myriad of people who own property for investment purposes. Many small landowners who also assume the role of landlord possess no greater sophistication than consumers-at-large. The

legislature has recognized that individuals of this status do not enjoy equal footing with financial institutions which, as a matter of course, dictate the terms of their loan documents.

In view of all of these factors, we agree with the Debtors' argument and hold that section 407 is applicable to the mortgage on the Commercial Property. As a result, NPB's confessed judgment is not final and is not merged with the mortgage. Therefore, the terms of the mortgage continue to govern the availability of attorney's fees and other costs. Nevertheless, a different analysis applies to the availability of attorney's fees under the commercial mortgage as opposed to the residential mortgage because section 406 of Act 6, as explained above, is not applicable.

(ii).

Accordingly, attorneys' fees will be available under the commercial mortgage if they are *(1)* allowable under section 506(b) of the Bankruptcy Code, *(2)* provided for under the parties' agreement, *(3)* reasonable and *(4)* permissible under state law. *Smith,* 76 B.R. at 426; *see also West Chestnut Realty,* 186 B.R. at 617; *Nickleberry,* 76 B.R. at 423. In this instance, a fee is permissible under section 506 because the debt is oversecured. A 15% collection fee is also provided for under the agreement. It is not necessarily clear, however, that the fee is reasonable or provided for under state law. The reasonableness of asserting a flat rate 15% collection fee is called into question because the fee is set forth in a liquidated damages provision that does not reflect the actual legal effort expended to obtain collection or take into account any other factors that would normally influence an award of attorney's fees, such as the party's success, the difficulty of the case or the quality of the work.

Viewed against these factors, the 15% collection fee is excessive. The confessed judgment that NPB took had little utility because it was not final and could not be executed upon. It was also easy to obtain the confessed judgment because, by definition, the proceeding was uncontested. Moreover, there is no need to set attorney's fees on a percentage basis in this instance because the amount of legal fees are readily calculable based on the attorney's billable rate and the time expended on the case.

Setting attorney's fees through a percentage amount is also not clearly permissible under Pennsylvania law. Although in some instances percentage fees are allowed under Pennsylvania law, *Midlantic Commercial Leasing Co. v. Tender Loving Care,* 1990 WL 72861 (E.D.Pa.1990) (20% attorney's fee provision found reasonable under circumstances); *Federal Land Bank of Baltimore v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344 (1979) (10% fee allowed), they are always potentially subject to disallowance as penalties. *In re Crane Automotive, Inc.,* 98 B.R. 233, 237 (Bankr.W.D.Pa.1989) (disallowing 10% collection fee). In all instances, Pennsylvania law requires that fixed percentage attorneys fees be reviewed for reasonableness. *Fetner,* 269 Pa.Super. at 460, 410 A.2d at 347; *see In re Huffman's Estate,* 349 Pa. 59, 63–64, 36 A.2d 640, 643 (1944). As indicated above, it is not reasonable for NPB to be awarded a 15% flat fee for obtaining the confessed judgment.

Finally, we note that it is particularly unreasonable to employ a flat rate to determine counsel fees in bankruptcy cases where professional fees paid from bankruptcy estates must normally be based on the actual amount and value of the services rendered. 11 U.S.C. § 503(b)(4) (compensation for professional services should be "based on the time, the nature, the extend and the value of such services"); *In re Meade Land and Development Co., Inc.,* 527 F.2d 280, 283–84 (3d cir.1975); *see also In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 844 (3d Cir. 1994) ("the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors"). Accordingly, we will not permit NPB to be compensated for legal fees at a 15% flat rate for the cost of obtaining the confessed judgment.

(iii).

The next question is whether NPB should be awarded counsel fees for its collection efforts in bankruptcy court, in both the

present and prior bankruptcy proceedings. As explained below, we hold that fees for legal services performed in the present and prior bankruptcy cases must be denied because they are not provided for in NPB's mortgage or note. According to NPB's mortgage, fees and costs are allowable to the extent they are provided for in the accompanying note. Exhibit "B", ¶ f. The note contains terms allowing for the receipt of some collection costs, but these terms are narrowly drawn. Specifically, the note states:

> In the event of any default hereunder: . . . (5) all parties hereto individually and jointly authorize and empower any attorney . . . to appear for and enter judgment against them for the above sum if not paid at maturity . . . with costs of suit, . . . and with 15 percent added for collection fees . . . .

Exhibit "A". This passage allows for the collection of fees and costs for a lawsuit to establish a judgment against Mr. Olick. It does not, however, provide a right to NPB to receive compensation generally for all fees and costs that might be incurred in the course of collection or specifically for fees incurred to assert its claim in a bankruptcy proceeding. The narrowness of this provision in the note becomes evident when compared with the terms of the note and mortgage at issue in *West Chestnut Realty*, 186 B.R. at 612. In *West Chestnut*, the court concluded that the creditor was entitled to postpetition collection fees, but the loan documentation was drawn much more broadly. The note in *West Chestnut* allowed for the collection of all fees incurred in connection with the note's enforcement:

> Upon any referral to an attorney after default to enforce any obligation hereunder or as otherwise provided by law, attorney's fees actually incurred by the Payee shall be payable by the Maker to the Payee . . .

*West Chestnut*, 186 B.R. at 617. NPB's note contains no similar grant of authority to collect attorney's fees simply upon a referral to

an attorney after default. The only fees allowable to NPB under the terms of its note are those incurred in connection with a suit to obtain a judgment against Mr. Olick. In view of this narrow language, and in consideration of the fact that the note was drafted on NPB's own preprinted standard form, NPB must be denied attorney's fees for services performed in state court to collect on the Commercial Property judgment and for services performed in connection with the Debtors' bankruptcy cases pertaining to the Commercial Property mortgage.[5] *Cf. Nickleberry*, 76 B.R. at 425 (denying fees for bankruptcy court litigation to creditor whose mortgage allowed fees only in connection with a "foreclosure proceeding").

### III.

We now turn our attention to NPB's motion for relief from the automatic stay. Acknowledging that the Debtors have equity in their property, NPB requests relief under 11 U.S.C. § 362(d)(1) for cause asserting that its interests are not adequately protected. NPB's most compelling argument is that cause exists due to the Debtors' failure to make payments to it during the course of the bankruptcy proceeding. NPB also asserts that the Debtors' failure to confirm a plan constitutes cause for relief. For these same reasons, NPB requests, in the alternative, that the case be converted to Chapter 7. The Debtors respond by pointing out that NPB is adequately protected by virtue of an equity cushion and state that they are waiting for a determination of their objections to NPB's proofs of claim before they can file a meaningful amended plan.

 It is well established that the moving party has the initial burden of producing evidence of cause to grant relief from the automatic stay under subsection (d)(1). *In re Hinchliffe*, 164 B.R. 45, 48–49 (Bankr. E.D.Pa.1994); *In re Colonial Center, Inc.*, 156 B.R. 452, 459 (Bankr.E.D.Pa.1993); *In re*

---

**5.** By contrast, it is worth observing that the terms pertaining to attorney's fees in the mortgage on the Residential Property mirror the language in *West Chestnut Realty* and are thus broad enough to cover bankruptcy court litigation. Attorney's fees were denied for that loan, however,

because they were not permissible under Act 6. But the use of broader language demonstrates that NPB (or its predecessor) knew how to appropriately draft a provision providing for attorney's fees in bankruptcy court.

*Ziegler*, 88 B.R. 67, 70 (Bankr.E.D.Pa.1988). The burden of persuasion then shifts to the debtor to establish that the creditor is adequately protected. *Hinchliffe*, 164 B.R. at 48–49; *Colonial Center*, 156 B.R. at 459; *Ziegler*, 88 B.R. at 70. The determination of adequate protection involves a careful balancing of all relevant factors including the value of the collateral, the likelihood it will depreciate over time, the debtor's prospects for a successful reorganization and the debtor's performance under the plan. *In re Aqua Associates*, 123 B.R. 192, 196–97 (Bankr. E.D.Pa.1991); *Ziegler*, 88 B.R. at 71. Other considerations relevant to the adequate protection inquiry are the balance of hardships between the parties and whether the creditor's property interest is being unduly jeopardized. *Aqua Associates*, 123 B.R. at 196; *Ziegler*, 88 B.R. at 71. Ultimately, the decision to grant relief from the stay is in the sound discretion of the bankruptcy court. *Colonial Center*, 156 B.R. at 459.

 In this instance, the Debtors have demonstrated that NPB is adequately protected by virtue of the facts that the properties are insured and that sufficient equity cushions exist to protect the value of NPB's liens. Thus, we are not prepared at this time to grant NPB relief from the stay. As the case approaches the two year mark, however, we must warn that significant progress must be made to confirm a plan in order to stave off relief from the stay in the future. In addition to the equity cushion, a significant component of our decision to continue the stay in place is the case's complexity. This case rivals the complexity of a Chapter 11 proceeding. Ordinarily, this Court would not permit a Chapter 13 case to continue for over a year and a half without a confirmed plan.

In any event, the time is approaching when the Debtors will be required to confirm a plan or endure an adverse result. In conclusion, relief from the stay will be denied due to the equity in the property and the complexity of the case.[6]

## CONCLUSION

The Debtors' objections to NPB's proofs of claim are granted in part and denied in part. Specifically, the objections are resolved as follows: *(1)* interest on the Residential Property mortgage may be assessed at 12% up to the present and continuing thereafter; *(2)* the 15% flat rate collection fee included in the claims for both the Residential and the Commercial mortgages is disallowed; *(3)* attorney's fees associated with both claims are denied for services performed in bankruptcy court; *(4)* attorney's fees associated with the claim for the Residential Mortgage may be recovered for services performed in state court for the purpose of enforcing NPB's mortgages, but only for fees that are reasonable and actually incurred, *i.e.,* based on attorney work time as documented in accordance with *In re Meade Land and Development Co.*, 527 F.2d 280 (3d Cir.1975); and (5) attorney's fees associated with the claim for the Commercial Mortgage may be recovered for services performed in state court to obtain a judgment, but only for fees that are reasonable and actually incurred, *Meade Land*, 527 F.2d at 283–84; and (6) the Debtors' request that offsets be applied against NPB's proof of claim for the Commercial Mortgage due to NPB's alleged failure to collect rents is denied. NPB's motion for relief from the automatic stay and/or for conversion to Chapter 7 is also denied. An

---

**6.** The Debtors also argue that relief from the stay should be denied because NPB cannot execute on its confessed judgments due to 41 P.S. § 407. For the reasons that follow, we reject this argument as unpersuasive. The fact that NPB cannot execute on its confessed judgments does not mean that somehow its mortgages are unenforceable or that its claims have become unsecured or are generally unenforceable against the collateral. Rather, had the Debtors not filed this chapter 13 petition, or if relief from the stay is ultimately granted in the future or if this case is dismissed before a discharge order is entered, NPB could enforce its claims and its mortgages

against the collateral by filing civil actions against the Debtors or by filing actions in mortgage foreclosure. Pursuant to section 407 of Act 6, the confessed judgments would be conformed to the judgments obtained in the civil actions and become ready for execution. The foreclosure judgments could be executed upon on their own terms and would be unaffected by section 407. Accordingly, we find that the fact that NPB cannot execute on its confessed judgments is irrelevant to our resolution of the section 362(d) motion and is irrelevant to the question of whether NPB continues to hold secured claims.

Order consistent with this Opinion will be entered and it will direct NPB to file amended proofs of claim computed in a manner consistent with this Opinion.

### ORDER

AND NOW, this 29th day of May, 1998, upon consideration of Debtors' Objections to Proofs of Claim numbers 6 & 7 pertaining respectively to mortgage loans secured by the properties known as 1220–1222 Chidsey Street, Easton, Pennsylvania (the "Commercial Property") and 4014 Crestview Avenue, Easton, Pennsylvania (the "Residential Property"), National Penn Bank's ("NPB") responses thereto, NPB's motion for relief from the automatic stay, and following submission of the matters to the Court on a stipulated record along with briefs and responses from each party, and in accordance with an Opinion of the Court of even date herewith, it is ORDERED, DECREED and DECLARED that:

1. NPB's motion for relief from the automatic stay is DENIED without prejudice.

2. With respect to the disputed issues concerning the proofs of claim they are resolved as follows:

(a). Interest on the Residential Property mortgage may be assessed at 12% per annum; the objection to interest at the contract rate of 12% per annum is DENIED.

(b). The 15% flat rate collection fee included in the proofs of claim for both the Residential and the Commercial Mortgages is DISALLOWED.

(c). Attorney's fees for both proofs of claim are denied for services performed in bankruptcy court.

(d). Attorney's fees may be recovered for services performed in state court for the purpose of enforcing NPB's mortgages on the Residential Property but only for fees that are reasonable and actually incurred, i.e., based on attorney work time as documented in accordance with In re Meade Land and Development Co., 527 F.2d 280 (3d Cir.1975).

(e). Attorney's fees may be recovered for services performed in state court for the purpose of obtaining a judgment on the Commercial Mortgage but only for fees that are reasonable and actually incurred, i.e., based on attorney work time as documented in accordance with In re Meade Land and Development Co., 527 F.2d 280 (3rd Cir.1975).

(f). The Debtors' request that offsets be applied against NPB's proof of claim for the mortgage on the Commercial Property for NPB's alleged failure to collect certain rents is DENIED.

3. NPB's proofs of claim as filed are DISALLOWED and NPB is directed to file, **within twenty (20) days from the date of this Order,** amended proofs of claim with respect to the loans secured by the Commercial and Residential Properties in compliance with the directives of this Order and the principles announced in the accompanying Opinion. Additionally, NPB should not seek to collect compensation from the Debtors for attorney's fees for which it already received compensation out of the insurance proceeds previously attained on account of the Commercial Property and NPB is directed to discuss the content of the amended proofs of claim with Debtors' counsel and seek input therefrom prior to the claims being filed.